JOHN H. MILLS and ISAAC M. DEAN *v.* THE CITY OF BROOK-
LYN.

A municipal corporation [of a village or city] is not liable to a private action for
damages accruing for not providing sufficient sewerage for draining the plain-
tiffs premises.

The duty of draining the streets, &c., of a city, although not a judicial one, is
of a judicial nature, requiring the exercise of qualities of deliberation and
judgment.

Where duties purely of a ministerial character are cast upon an officer, although
his chief duties are judicial, and he violates his ministerial duties, he is civilly
responsible; but in respect to judicial duties, it is otherwise.

Where the authorities of a city caused·a sewer to be constructed for a locality
which included the plaintiff's premises, but which, though not in itself a
nuisance, was insufficient to carry off the water, *held*, that the city corpora-
tion was not responsible for plaintiff's damage occasioned by the overflowing.

APPEAL from a judgment of the Supreme Court.   The
complaint sets forth that the plaintiffs were the owners of a
lot, with a brick dwelling house thereon, situated at the
northwest corner of Franklin and Putnam avenues, in the
city of Brooklyn; that the defendant, the city corporation,
had, by law, the care of the streets and avenues and the con-
trol of the widening, sewerage and draining of said streets
and avenues; and it proceeds thus: "that the defendant, &c.,
negligently and unskillfully built, provided and established
sewers at the corner of Franklin and Putnam avenues; that
said sewers are, and always have been, insufficient to conduct
and carry away properly the water that is brought to said
corner by the grade of Putnam and Franklin avenues, and
the streets and avenues thereto adjacent; and that said
sewers are so negligently and unskillfully built that they
fail to perform the office for which they are and were con-
structed."   It is then stated that by reason of the premises,
the plaintiffs' lot and house have been repeatedly flooded with
water, namely, on certain days mentioned, in March and
August, in 1861 and in 1862, causing the walls to settle and
crack, and the building to be otherwise greatly injured; for
which damages are claimed to $2,500.

The answer takes issue upon the facts alleged.

On the trial, before Mr. Justice Scrugham, in June, 1863, it appeared that the plaintiffs' lot, at the intersection of the avenues mentioned, was on low ground, forming a natural basin into which the water ran from all directions; that formerly, before the forming and paving of the streets, it was absorbed by the earth, instead of remaining on the surface; that Franklin and Putnam avenues are graded and paved according to the plan of the common council, and that the grade of these streets is higher than the plaintiffs' lot. In March, 1861, and again in August, of the same year, there were rain storms, the latter being a heavy one; and on both occasions the plaintiffs' premises were inundated. The first time, there was about two feet of water in the cellar, and the walls were cracked by settling; the second time, the water was much deeper, and it caused the walls to settle and crack badly, and the house was much injured. The house was a new one, finished in 1860.

There was a sewer, or outlet, for water under the sidewalk of the street, prior to the first storm; and after the storm of March, and in the month of May following, the water commissioners caused a pipe-drain earthen sewer to be constructed in the street, about twelve inches in diameter; but it proved insufficient to carry off the water as it came down. It appeared that the sewer was built in consequence of a resolution of the common council, adopted on the 18th April, 1861, by the terms of which the commissioners of sewers were requested to construct a temporary sewer at that place, pursuant to an act of the legislature, passed on the 5th day of that month, which is mentioned in the opinion.

On the part of the defendants, it was shown by the testimony of an assistant engineer of the water and sewerage commissioners, who constructed the sewer, that it was of stoneware pipe, and was eighteen inches in diameter above the plaintiffs' premises and twelve inches below that point; that a larger sewer could not be laid on that course, in consequence of the grade and dimensions of the sewers with which they were obliged to connect it; that if made larger

it would have to be so near the surface of the street, that it could not have a sufficiently thick covering, and moreover, it could not be larger than the corresponding sewer below. After the August storm, an additional sewer was constructed at that point.

The defendants also gave evidence showing that the walls of the house were very much injured by water prior to the laying down of the temporary sewer in May, 1861, and also that the basement wall of the house was laid with unsuitable mortar, it lacking the proper proportion of lime.

Considerable evidence was given upon the question of damages.

The defendants, at the commencement of the trial, moved for a dismissal of the complaint on the ground that it did not state facts sufficient to constitute a cause of action; and at the close of the testimony they made a like motion, insisting that the defendants were not responsible for the work under the provisions of the statute on the subject of sewers, and on the ground that as the sewer was made as large as it could be, no negligence could be imputed to the defendant. These motions were denied on each occasion, when made, and the defendants' counsel excepted.

The judge left the case to the jury, instructing them that the plaintiffs were not entitled to recover for any injuries sustained by them prior to the building the sewer in May, 1861. The jury found for the plaintiffs; damages, $900.

After an affirmance at the General Term, this appeal was brought by the defendants, and it was submitted on printed briefs.

*J. G. Schumaker*, for the appellants.

It is a judicial act on the part of the common council to decide how many and what sewers are necessary and should be constructed, and erring in judgment in deciding upon the construction of this sewer, it being in the nature of a judicial error, they are not responsible. It is *damnum absque injuria.*

The common council is not a board of engineers or prac-

tical experts in the matter of sewerage. They must exercise their best judgment in the matter, and the city are not liable for their errors in such judicial decision. (See *Barton* v. *The City of Syracuse*, 37 Barb., 292; *Willson* v. *The Mayor, &c., of New York*, 1 Denio, 599; *Cole* v. *Trustees of Medina*, 27 Barb., 218; *Rochester White Lead Company* v. *The City of Rochester*, 3 N. Y., 463; *Griffin* v. *Mayor, &c., New York*, 9 id., 459; *Kavanaugh* v. *City of Brooklyn*, 38 Barb., 232.)

*David J. Dean*, for the respondents.

The premises of the plaintiffs were damaged by the overflow caused by the insufficiency of the sewer at the intersection of said streets, to carry off the water brought to that place by the grades of Putnam and Franklin avenues and the adjacent streets.

The charter of the defendants imposes the duty to provide a sufficient number of drains, &c., to carry off the surface water of lands which shed their water across the line of streets graded and paved by them. (Laws of 1854, ch. 384, tit. 4, § 1.)

Also the Laws of 1861, ch. 336, empowers the defendants acting through the sewer commissioners, upon the request of the common council, to cause temporary drains to be constructed to avoid damage or to abate a nuisance, and to assess the costs of such sewer or drain upon the property draining into the same and benefited thereby.

The duty to provide sewers, drains, &c., is ministerial in its character and not judicial. To determine when to act under the power conferred, to devise and decide upon the plan and method of constructing the sewers, is confided to the discretion of the defendants, and so far their judicial powers extend, and no further. For the safety, sufficiency and skillful construction of the sewers, the defendants are responsible. Where the duty thus imposed is violated or negligently performed, the parties injured may have redress by action. (*Rochester White Lead Co.* v. *The City of Roch-*

*ester,* 3 Comst., 464; *The Mayor, &c., of the City of New York* v. *Furze,* 3 Hill, 612; *Lacour* v. *The Mayor, &c.,* 3 Duer, 406; *Barton* v. *The City of Syracuse,* 37 Barb., 294; *Hutson* v. *The Mayor, &c.,* 3 Seld., 163; 1 Denio, 601; *Conrad* v. *The Trustees of Ithaca,* 16 N. Y., 159.)

The act renders the property of plaintiff liable to assessment for the cost of the improvement, and they, therefore, have the right to demand in return therefor a complete and perfect execution of the power when undertaken by the defendants.

The defendant is liable for the neglect of the sewer commissioners, &c. (See 3 Hill, 531; *Bailey* v. *The Mayor,* 3 id., 612; *The Mayor* v. *Furze,* 2 Denio, 433.)

DENIO, Ch. J. Prior to the more recent legislation on the subject of sewerage in Brooklyn, the common council of that city were clothed with the usual power to cause streets and avenues to be opened and widened, regulated, graded and repaired, and to cause sewers and drains, wells and pumps to be constructed and repaired; and the expense of such improvements was to be assessed on the property benefited. (Laws of 1854, ch. 384, p. 860, § 1.) A change was made in 1857, by which the whole subject of sewerage and drainage was committed to the board of water commissioners, who were constituted sewerage commissioners, and were to devise and frame a plan of drainage and sewerage; and were to construct such of the drains and sewers therein adopted, as the public health, convenience or interest should demand, or so much thereof as should be necessary. (Laws of 1857, ch. 521, § 5, p. 100.) This act was amended in 1859, and some provisions added not material to the present question. (Ch. 385.) In April, 1861, some four months before the injury happened for which the recovery in this case was had, another act was passed, under which the sewer in controversy was constructed. It provides that whenever it shall become necessary to construct a sewer or drain in any street or avenue for the purpose of preventing damage to property, or to abate a nuisance, and it shall have become impracticable to proceed immediately to the construction of the same, in accordance with any plan already

adopted by the sewer commissioners of the city of Brooklyn, for the drainage district in which such streets are situated, by reason of any street therein not having been graded, there-upon, at the request of the common council of such city, the sewer commissioners shall have power to construct a temporary sewer in such manner as to avoid such damages or abate such nuisance; and the cost of such temporary sewer or drain shall be assessed upon the property draining into the same and benefited thereby, &c. (Laws 1861, ch. 136, § 6, p. 257.)

The defendants' counsel made a point that the city is not responsible for any delinquency respecting the sewer in question, because it was not shown that the case had occurred which conferred upon the council the authority to construct a temporary sewer. It is true it was not shown what streets the sewerage district in which the plaintiffs' premises were situated embraced, or whether there were any streets therein which had not been graded; and the existence of ungraded streets in the sewerage district seems to have been necessary to empower the common council to proceed under the act. That body did, however, assume that a case for the exercise of its jurisdiction had arisen, and accordingly adopted a resolution for the construction of a temporary sewer. If the showing of a want of power would have been a defense, the burden of proof rested on the defendants. The authority of the council depended upon matters of fact at least as fully within its knowledge as that of the plaintiffs. They assumed that the requisite fact existed, and proceeded accordingly. In the absence of any evidence on the subject we must assume that a case had arisen upon which their power attached, and that the corporation is fully concluded by their acts.

But a more important question arises, whether, upon the case made by the complaint and the evidence, a private action would lie against the city corporation for the injury which the plaintiffs have sustained. In the examination of this question, I have assumed that the city is responsible for the delinquencies of the board of sewer commissioners, to the same extent which they would have been if the subject of

sewerage had remained where it was placed by the act of 1854. I do not suppose that the committing of the subject to an administrative board, though done pursuant to an act of the legislature, alters the relation which the city, as a municipal corporation, bears to the subject. That view has not been urged by the defendants' counsel, and I have not examined it with much attention, having come to a conclusion which renders its determination unnecessary.

The grievance of which the plaintiffs complain, is that sufficient sewerage to carry off the surface water from their lot and house has not been provided. A sewer of a certain capacity was built, but it was insufficient to carry off all the water which came down in a rain storm, and the plaintiffs' premises were, to a certain extent, unprotected. Their condition was certainly no worse than it would have been if no sewer at all had been constructed. So far as the one laid down operated, it relieved the plaintiff's lot; but the relief was not adequate. If the defendants would have been liable if they had done nothing, they are of course liable for the insufficient character of the work which was constructed.

But it is not the law that a municipal corporation is responsible in a private action for not providing sufficient sewerage for every, or for any part of the city or village. The duty of draining the streets and avenues of a city or village, is one requiring the exercise of deliberation, judgment and discretion. It cannot, in the nature of things, be so executed that in every single moment every square foot of the surface shall be perfectly protected against the consequence of water falling from the clouds upon it. This duty is not, in a technical sense, a judicial one, for it does not concern the administration of justice between citizens; but it is of a judicial nature, for it requires, as I have said, the same qualities of deliberation and judgment. It admits of a choice of means, and the determination of the order of time in which improvements shall be made. It involves, also, a variety of prudential considerations relating to the burdens which may be discreetly imposed at a given time, and the preference which one locality may claim over another. If the owner of property may prose-

cute the corporation on the ground that sufficient sewerage
has not been provided for his premises, all these questions
must be determined by a jury, and thus the judgment which
the law has committed to the city council, or to an adminis-
trative board, will have to be exercised by the judicial tribu-
nals.   The court and jury would have to act upon a partial
view of the question, for it would be impossible that all the
varied considerations which might bear upon it could be
brought to their attention in the course of a single trial.
Such a system of law would be as vexatious in practice as it
is unwarranted in law.   It has been frequently invoked, but
never, I believe, with success.   The subject of constructing
sewers is of the same general character as that of laying out,
grading or paving streets.   Persons may differ as to whether
a street ought to be pitched or paved at a particular time,
and as to the grade which should be established if it is done.
In *Wilson* v. *The Mayor, &c., of New York* (1 Denio, 595),
an action was brought against the corporation for grading
the streets running on two sides of the plaintiff's lots, with-
out making a sufficient drain to carry off the water which
was thus thrown upon these lots.   The plaintiff was non-
suited, and the question was brought before the former Supreme
Court, which sustained the ruling.   The opinion, prepared
by the late Judge Beardsley, explains the law on this point
in a very satisfactory manner.   He shows, in the first place,
that the city corporation had an undoubted right to form the
grade of the streets and avenues; and that, if inconvenience
or damage was occasioned to persons whose land was not
actually taken, it was an injury which they were bound to
submit to for the common good, under the maxim, *salus populi
suprema est lex.*   As to the grievance that sewers had not
been made to carry off the water which the raising of the
streets had thrown upon the plaintiff's lots, the remarks of
this able judge are so just in themselves, and, withal, so appli-
cable to the present case, that I will repeat them as expres-
sive of my own views.   He says: "A drain from the plain-
tiffs' lots was charged to have been necessary and proper;
and the declaration alleges that it was the defendants' duty to

have made one; and as none was made, the conclusion is drawn that they were responsible to the plaintiff for all the damages which resulted from the want of a proper drain. This alleged ground of action seems to me wholly unprecedented, and, in my judgment, can be sustained on no principle whatever. The error has arisen from confounding powers and duties which are totally distinct. Public officers of every grade and description may be impeached or indicted for official misconduct or corruption. To this there is no exception, from the highest to the lowest. But the civil remedy for misconduct in office is more restricted, and depends exclusively upon the nature of the duty which has been violated. But where that is absolute, certain and imperative, and every mere ministerial duty is so, the delinquent officer is bound to make full redress to every person who has suffered by such delinquency. Duties which are purely ministerial in their nature are sometimes cast upon officers whose chief functions are judicial. Where this occurs, and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. But where the duty alleged to have been violated is purely judicial, a different rule prevails; for no action lies, in any case, for misconduct or delinquency, however gross, in the performance of judicial duties. And although the officer may not, in strictness, be a judge, still, if his powers are discretionary, to be executed or withheld according to his own view of what is necessary and proper, they are in their nature judicial, and he is exempt from all responsibility by action for the motives which influence him and the manner in which such duties are performed. If corrupt he may be impeached or indicted, but the law will not tolerate an action to redress the individual wrong which may have been done." This case, which is a leading one on this class of questions, has repeatedly come under the consideration of the present Supreme Court, and of this court, and has always been referred to as an accurate exposition of the law. (*Cole* v. *The Trustees of Medina*, 27 Barb., 218; *Cavanagh* v. *The City of Brooklyn*, 38 id., 232; *The Rochester White Lead Co.* v.

*The City of Rochester; Hudson* v. *the Mayor, &c., of New York,* 5 Seld., 163.) It is not necessary to show that the principle thus admitted has always been correctly applied, though I am not ready to affirm that any material mistake in that respect has ever been made. In the first two of these cases the plaintiffs were defeated upon the principle above mentioned, and the judgments were sustained in very instructive opinions, prepared by Judge MARVIN and Judge BROWN.

It may, therefore, be laid down as a very clear proposition, that if no sewer had been constructed at the locality referred to, an action would not lie against the corporation, though the jury should find that one was necessary, and that the defendants were guilty of a dereliction of duty in not having constructed one.

But the defendants put down a sewer which was insufficient to carry off all the surface water which fell during a violent shower. There was no want of skill in constructing it; simply it was not sufficiently large. The evidence was that it could not have been made larger on account of the grade and size of the system of sewers with which it connected, and through which the water had to be carried off. The evidence as to this was entirely uncontradicted; and there was nothing intrinsically improbable in the assertion. Unless the defendants were responsible for the want of judgment upon which that system was devised, I do not see why this evidence was not a complete answer to the action; and that they were not responsible for that, follows from what has already been said. Very many considerations besides the protection of the land upon which the plaintiffs' house was erected, no doubt entered into the question when that system was determined upon. It is inferable from the evidence that the plaintiffs' land was then vacant and unimproved, and that the adjacent streets had not been graded. While that state of things existed it was seen that the surface water was absorbed by the earth, and injured no one. No doubt public improvements, in a growing town, ought to be made with a certain reference to anticipated changes. But it would require a degree of wisdom and foresight not usually met

with in public officers, to adjust and apply the expenditures for public purposes so perfectly that no deficiency or redundancy would ever be found to exist. It is a wise provision of the law that an action for damages does not lie for such errors of judgment on the part of the agents of the public.

Certain cases are relied on by the plaintiffs' counsel for the position that as the common council determined to construct a sewer at the point indicated, and entered upon the work, the city is liable for damages because it proved insufficient for the object for which it was intended. But they fall far short of establishing that doctrine. In *The Mayor, &c.,* v. *Furze* (3 Hill, 612), certain culverts, sewers and basins, which had been constructed by the corporation of New York, had been suffered to be out of repair, on account of which the plaintiff's premises were overflowed; and the plaintiff recovered a verdict, which was sustained. The judgment was placed upon the ground that it was the duty of the corporation to preserve and keep in repair erections which they had themselves constructed, so that they should not become sources of nuisance to the adjacent proprietors. There are certain observations in the opinion which would go beyond that principle; but they were conceded by the judge who delivered it not to be necessary to the judgment; and they are expressly disapproved of in the subsequent case of *Wilson* v. *The Mayor, &c.,* just referred to, and in several other cases, and have never since been acted on.

In *The Rochester White Lead Co.* v. *The City of Rochester,* already mentioned, a natural stream of water was intersected by a city street, and the stream was conducted under it by a culvert, which seems to have been sufficient for its passage; but some years afterwards, the position of this culvert was changed to a point under the street more than one hundred feet from its original place, and was so badly constructed, by an incompetent engineer, with rough stones, and with certain angles in its course, that the water would not run off freely, and the plaintiff's manufactory of white lead was overflowed and his property injured. The plaintiffs had a verdict and judgment, which were sustained in this court. It was held

that the duty in that case was ministerial, and that the obligation to make the change in a proper and safe manner, if made at all, was absolute.   The corporation was dealing with a work of their own construction, and certainly no more justified in making a change which would subvert its purpose than they would have been to suffer it to become a nuisance by being out of repair.   The cases of *Barton* v. *The City of Syracuse* (37 Barb., 292), *Hudson* v. *The Mayor of New York* (*supra*), *Conrad* v. *The Trustees of the Village of Ithaca* (16 N. Y., 158), *West* v. *The Trustees of Lockport* (in a note to the last case), and *Latour* v. *The Mayor, &c., of New York* (3 Duer, 406), are all cases where the injury was either the result of suffering a municipal work to be out of repair, or where the defendants had done acts which were in themselves positive nuisances.   They furnish no ground for holding a municipal corporation responsible for not providing suitable sewerage, whether the neglect was total, or partial only, arising from the insufficiency of a sewer to discharge all the water which it was intended to carry off.

The questions in this case were raised by the motion to dismiss, on account of the insufficiency of the complaint, which did not, according to the foregoing views, set forth a cause of action, and by one of the points taken at the close of the trial.

I am in favor of reversing the judgment of the Supreme Court, and ordering a new trial.

Judgment reversed and new trial ordered.