2h 293
f 64a 603

JOSEPH DURYEA, PLAINTIFF, v. THE MAYOR, ETC., OF THE CITY OF NEW YORK, DEFENDANTS.

*Grant of lots under water — covenants contained in — construction of — Conditions — when void as repugnant to grant — Street commissioner — powers of.*

This action was brought to recover damages for injuries to lands of plaintiff, occasioned by the discharge of water upon them, from sewers constructed by the defendant. The lands were originally under water, and had been filled in by the plaintiff. By the deed from the defendant, under which the plaintiff

*Bank of Bethel v. Pahquioque Bank, 14 Wallace, 383.

claimed, the grantee was obliged, when required thereto, but not till then, to erect according to any resolution or ordinance of the corporation, good and sufficient, firm avenues, wharves, etc., in the directions mentioned, and according to maps referred to; and by said deed it was further agreed, that the grantee was not to build the wharves and bulk-heads, avenues or streets, or any part thereof, or make land in conformity to the covenants mentioned, until permission for that purpose should be first obtained from the defendant. *Held*, that although the filling in, to make land of the intermediate spaces between the shore line and the line of the streets, etc., was not expressly prohibited by the deed, yet, from the covenants contained therein, it was to be inferred that such filling was not to take place until the permission of the defendant had first been given.

In 1856, an ordinance was passed, extending East street, and authorizing and directing the adjoining proprietors to make and complete that street, and to fill in and level the spaces between their property and the street. *Held*, that the direction contained in the ordinance was not to make land of water lots, but only to the proprietors of land adjoining or nearest, or opposite to East street, to fill in between their property and that street.

In 1867, the plaintiff obtained from the street commissioner permission to build a bulk-head in front of the lots in question, under the direction of the superintendent of wharves, " the same not to be filled in behind until directed by said superintendent." The plaintiff relied upon this as a permit from the defendant to fill in the land. *Held* (1), that the commissioner of streets had no authority to direct or permit the construction of bulk-heads; (2), that, from the very terms of the permit, the land was not to be filled in, until directed by the superintendent of wharves, and that no such direction was proved in this case.

The plaintiff insisted that the conditions in the deed to his grantor, were repugnant to the grant, and void. *Held*, that the defendant, being a municipal corporation with legislative powers in reference to streets, avenues and wharves, could make no contract limiting them, and could therefore impose a condition on any grant embracing such subjects, with reference thereto, not inconsistent with the law of the land.

MOTION for a new trial, on exceptions ordered to be heard in the first instance at the General Term. The facts are stated in the opinion.

*A. J. Vanderpoel* and *F. J. Fithian*, for the plaintiff.

*E. Delafield Smith* and *D. C. Calvin*, for the defendants.

BRADY, J.:

The plaintiff's claim to compensation in damages, rests upon his title, derived through a grant made by the defendants, The Mayor, Aldermen and Commonalty of the city of New York, to the Farm-

ers' Loan and Trust Company, bearing date the 29th January, 1847, conveying to them divers water lots and soil under water, to be made land, and gained out of the East river or harbor of New York, and which included the premises subsequently, and on or about the 1st February, 1866, aliened to him. The cause of the injury is the alleged building and construction of sewers near the premises of the plaintiff, "in so careless and improper a manner," that large quantities of water and filth ran from them, upon such premises, washing away large quantities of earth, and carrying away and destroying a large portion of the bulk-head erected by him. Upon the trial, the plaintiff proved his purchase of the *locus in quo*, the erection of a bulk-head across the east end of his premises by permission of the street commissioner, and attempted to show that, after the completion of the bulk-head, he proceeded to fill in and make land between the shore and the bulk-head. It was also proved that the sewers, one or both of which occasioned the injury complained of, were in existence at the time he commenced to build the bulk-head, and to fill in to make land. No evidence was offered, however, to show that the sewers were improperly or carelessly constructed, as averred in the complaint. The covenants and conditions, in the grant to the Farmers' Loan and Trust Company, under which the plaintiff necessarily claimed, must be resorted to and interpreted, in order to ascertain whether he was in such relation to the defendants, as enabled him to call upon them to respond, assuming his alleged injuries to have been sustained. The deed to them, and under which the plaintiff claims, as already suggested, was not an absolute, unconditional grant of the lots described. It contained covenants and conditions to which the transfer was subservient. The grantee was obliged, when required thereto, but not till then, to erect, according to any resolution or ordinance of the corporation, good and sufficient firm avenues, wharves or streets in the direction mentioned, and according to maps referred to, and, in addition, firm bulk-heads, wharves, avenues, or streets in front of these streets, avenues or wharves, thus particularly mentioned and referred to. It is further covenanted, that the true intent and meaning of the grant is, that the grantees will not build the wharves and bulk-heads, avenues or streets, or any part thereof, or make land in conformity to the covenants mentioned, until per-

mission for that purpose should be first had and obtained from the grantors, the defendants.

The deed also contained a condition in reference to the grantees, their heirs or assigns, that if they should make default in the performance of any or either of the covenants, on their part to be observed, performed, fulfilled and kept, then, and in such case, every article, clause or thing therein contained, should become absolutely void, and the grantors thereafter seized of the premises, discharged of any claim, right or pretense of such grantees. The prohibition against filling in, to make land of the intermediate spaces between the shore line and the line of the streets, avenues, wharves or bulk-heads, was not expressly stated, but neither the streets, nor any part of them, were to be made without the requirement contemplated, or the permission given, for which provision was made. The lots were to be made land, and gained out of the East river or harbor of New York, and it is evident that this could not be done, without the barriers which the wharves, streets, avenues and bulk-heads would accomplish, against the influence of the tide-waters upon the soil deposited. This may be explanatory of the absence of any express provision in regard to the filling in of the space referred to, and affords a reasonable presumption that this was understood by, and in contemplation of, the parties when the deed was made. The filling in to make lands, was, in other words, so necessarily connected with the construction of the streets, avenues, wharves and bulk-heads, that it could not be accomplished without uniting them. The course of procedure by the plaintiff illustrates this. He did not begin to fill in, until he had completed the bulk-head. This fact is shown by the question asked him and rejected. There are other reasons, however, which may be called into view. The rights of the owners of adjoining lands — the location of sewers and riparian rights — might require consideration by the defendants, and such directions given, as would avoid a clashing of these interests. The defendants were to be consulted, that, all things considered, the permission might be given with due regard to the rights and interests of the people, and of the corporation. The whole scope of the deed seems to be, therefore, that the water lots should not be made land, until the grantees were required to make them so, or

the defendants gave permission to have it done, which, in reference to the time and manner in which it should be accomplished, would in effect be the same. The permission could embody the requirements on the subject. It is not pretended that the plaintiff was required to fill in, to make the land, or that he had permission to do so. It is insisted, however, upon his part, that the ordinance extending East street, and authorizing and directing the adjoining proprietors to make and complete that street, and to fill in and level the spaces between their property and that street, together with the permit, obtained from the street commissioner, to build a bulk-head, constitute a general consent to all owners, and a particular consent to him, to fill in and make his lots. The resolution referred to, was passed in December, 1856, and declared that the street should be made, and the filling in completed, before the 1st January, 1860. The plaintiff acquired his title in 1866. The direction contained in the resolution, was not to make land of water lots, but to the proprietors of land adjoining, or nearest, or opposite to East street, to fill in between their property and that street. It was not therefore a permission given to the plaintiff or his grantors, unless he or they were such proprietors, assuming that East street in its locality embraced the lots of the plaintiff, of which there is no evidence. The requisition was to fill in and level the space between the property of the proprietors named, and East street, and not upon owners of water lots, only to make land of them.[*] If this construction of that resolution be erroneous, it avails the plaintiff nothing, because he has failed to bring himself within its purview. He has not shown that East street embraced the locality of his lots · He was bound to do so, in order to reap the advantages which the resolution furnished. He sought to make the defendants liable for negligence in the discharge of their duties, and he was obliged to establish his charge by proof. The permission to fill in the lots, was not given, therefore, either directly or indirectly, and the filling in was done without authority. The plaintiff is not aided in his difficulties, by the permit of the street commissioner. That officer was not authorized to give the permission contemplated. The covenant in the grant declares that the bulk-head must be built on the requirement or permission of the defendants. We have not

[*] Furman v. The City of New York, 5 Sandf., 40.

been referred to any statute or ordinance, delegating to the commissioner authority to grant the permission. His powers are defined by section 23, chapter 446, of the Laws of 1857, which creates an executive department, denominated the street department, and which, it is declared, shall have cognizance of building, and repairing, and lighting wharves and piers, under the ordinances of the common council. This confers no authority, other than a supervisory one. It relates to the building of wharves, in accordance with the ordinances of the common council. It does not, in letter or spirit, delegate to him the power, either to direct the building of bulk-heads or wharves by another, or to give permission to another to do it, in accordance with a grant made by the common council to whom he was subordinate. The common council, in 1859, by ordinance approved June twentieth, declared that the street department should have cognizance, among other things, of building, repairing and lighting wharves and piers, but, at the same time, provided that no expenditure should be made for any work or supplies, relating to any matters within the cognizance of the street department, unless authorized by the common council; except when necessary, and then, only, to the extent of $250. These powers relate to expenditures by the corporation — to buildings by them at their expense, and to them only; and, even in such cases, their authority must be sought and exercised, and their sanction given. The building of a bulk-head by some other person, under contract with them for that purpose, and as they shall direct or allow, is not within the cognizance of the street commissioner, until recognized by them as an act to be done. He cannot determine the time when, or manner in which, that covenant shall be performed. He cannot, in other words, build a bulk-head on his own authority, or allow one to be built. It thus appears that the authority to grant permission, was neither conferred by ordinance or by statute. The plaintiff was dealing with a municipal corporation possessing extensive powers, many of which it could not barter away by contract. The conditional character of the grant, itself, gave him notice of their continued dominion over the aliened area. His rights were subordinate to the legislative control of the defendants, acting within the powers conferred upon them in that respect. It was obligatory upon him,

therefore, when he sought privileges, to see to it, that he obtained them from the proper source — the ruling authority. He did not do so, and his acts were unlawful. If, however, we resort to the permission, itself, given by the street commissioner, as a justification for the plaintiff's proceedings, we find that it was limited in terms. It gave the plaintiff authority to build a bulk-head, but expressly declared that the same was "not to be filled in behind, until directed by the superintendent;" and thus the defendants, even through their officer, maintained the right to determine the time for filling in. There is no force in the further suggestion on this subject, that the conditions in the deed to the Farmers' Loan and Trust Company, are repugnant to the grant, void, and therefore of no binding validity. The answer to that proposition has been already stated, and it is, that the defendants, being a municipal corporation, with legislative powers in reference to streets and avenues and wharves, could make no contract limiting them, and could therefore impose a condition on any grant embracing such subjects, with reference thereto, not inconsistent with the law of the land. There is, however, a further answer, and that is, that the defendants are not seeking to enforce a condition against the plaintiff. He is the actor, not they. He seeks to compel them to pay him for injuries, which occurred to him by reason of his own unauthorized acts, and he must fail. Whether a court of equity would relieve him, if the defendants were endeavoring to destroy his grant, is another question, and one we are not called upon to discuss.

It may be said in addition, and in conclusion, that the case is also deficient on the question of negligence, in regard to the construction of the sewers. The duty of determining the location and dimensions of sewers, is in its nature judicial; and the omission to construct one, or the failure to make it of sufficient size, creates no liability, * although the obligation to construct it properly, and keep it in repair, being ministerial, negligence in its performance, renders the city liable for damages which may result therefrom. †

The judgment should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed.

* Mills v. City of Brooklyn, 32 N. Y., 489 ; McCarthy v. The City of Syracuse, 46 id., 194.                                          † Id.