FREDERICK E. HUBBELL BY JOHN W. HUBBELL, HIS GUARDIAN AD LITEM, RESPONDENT, *v.* THE CITY OF YONKERS, APPELLANT.

*Negligence — liability of a city to one injured by reason of the dangerous plan of construction of a street.*

While the plaintiff was being driven by a friend along Linden street, in the city of Yonkers, the horse became frightened at an approaching bicycle, started aside, became unmanageable, and finally crossed the sidewalk and went over an embankment, some twelve feet high, carrying the wagon and the plaintiff with him. Linden street was a public highway and had been constructed some ten years before in accordance with plans and specifications adopted by the common council of the city, under the authority conferred upon it by its charter. The plans did not provide for any railing along the embankment where the horse went over and no railing had ever been put there. The carriage-way of the street was about thirty feet wide, and the street had a sidewalk on each side ten feet wide.

In an action brought by the plaintiff to recover damages for the injuries he had sustained:

*Held*, that a verdict in his favor would be sustained. (PRATT, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Joseph F. Daly*, for the appellant.

*Edwin R. Keyes*, for the respondent.

DYKMAN, J. :

The power of municipal corporations to make improvements may or may not be exerted, and for a failure to proceed or an erroneous estimate of the requirements of the public, no civil action can be maintained.   The reason being that the duty imposed is judicial in its character, requiring the exercise of deliberation and judgment.

But when action has been taken and judgment has been exercised and an improvement has been made, then a duty is imposed on the municipality to continue the same in order and repair.   This is a ministerial duty and for its violation or neglect a civil action may be sustained for damages resulting therefrom.   (*Hines* v. *City of Lockport,* 50 N. Y., 236; *Sewell* v. *Cohoes,* 75 N. Y., 45; *Gillespie* v. *Newburgh,* 54 N. Y., 468; *Kennedy* v. *Mayor,* 73 N. Y., 365.)

The municipal corporations of this state have power under their charters to command the means of keeping the streets within their limits in a safe condition for use, and hence it is their duty to do so, and for a failure in its performance from which injury results a civil action may be maintained.   (*Ehrgott* v. *Mayor,* 96 N. Y., 264.) While it is true that negligence cannot be assigned against a municipal corporation for the design or plan of an improvement, the public may at the same time require care in its construction and management.

In this case the question relates to the construction of the street, and its subsequent condition.   The complaint is that an embankment on its side was left entirely unprotected, and the absence of such guards rendered the accident possible, or rather that the accident resulted from such absence.   The plaintiff was riding along Linden street in the city of Yonkers, in a wagon with a friend, who was driving, when the horse became frightened by an approaching bicycle.   He started suddenly aside and became unmanageable; the driver lost control of him and the horse and wagon went over an embankment and the plaintiff was carried with them and received the injuries complained of.   Linden street is one of the public streets of the city of Yonkers, and has been made about ten years.   Its construction was in accordance with plans adopted by the common council of the city which specified no railing or guard along the edge of the embankment.

Now, the claim on behalf of the city is that the street was con-

structed according to a plan adopted by the common council, and therefore no liability can attach to the city, even though the plan was defective, and the injury resulted therefrom, and to maintain this position the doctrine is invoked which has already been noticed. That doctrine is salutary and just when properly applied, as it was in *Urquhart* v. *Ogdensburgh* (91 N. Y., 67). There the defect complained of was the slopes in the sidewalk from the building to the street, which was about seven and three-eighth inches in a width of six and one-third feet. Ice had formed on this sidewalk suddenly, from water carelessly spilled just previous to the accident which caused the injury. There was no allegation or suggestion of negligence in the prosecution of the work, or that the sidewalk was laid unskillfully, or that it was defective at the time of the accident; so that the entire complaint was against the exercise of the judicial discretion of the city authorities in establishing the grade of the sidewalk, and the decision was that no civil action could be maintained in such a case. The case of *Mills* v. *Brooklyn* (32 N. Y., 489), was decided on the same principle. But these cases do not decide that a municipal corporation may escape liability for a defective construction of an improvement, merely because it is made in accordance with an approved plan. If a bridge over a ravine or a water stream was built by a city or village, and left without a side guard, or a street was constructed on a causeway high above the natural level of the ground, and left without side rails or protection, responsibility for injuries resulting from their absence could not be avoided by showing that they were made in accordance with the plans. Such a doctrine, carried to its legitimate conclusion and result, might release all municipal corporations from the duty imposed on them to maintain the streets within their limits in a safe condition for travel in the usual modes. Here we have the case of a public street built ten feet in the air, and left for ten years unprotected, and the city desires to escape liability because the original plan of the improvement called for no side protection. The effort cannot succeed. If the public had this right to require guards for the sides of this street, and the failure to erect them was negligence, the city is liable for injuries resulting from their absence. But it is further claimed that the injury in this case resulted from the fright of the horse, and not from the

defect in the street. In the examination of this question, it must be assumed that it was the duty of the city to place guards along the sides of the street; that the failure to do so was negligence, and that there was no negligence in the management of the horse. The duty imposed on municipal corporations to keep the streets in a condition of safety has reference to all the ordinary requirements of the public streets, and highways are made for travel in all the ordinary modes. The animals usually employed on the roads are horses, and the road-beds are constructed with reference to their use, but ordinary care requires also that the streets and highways shall be constructed and maintained with reference to all the ordinary exigencies arising thereon. Horses do not reason, and are liable to sudden frights, and in their fear and terror they often start suddenly aside from the path of ordinary travel. But a horse is not beyond control when he merely shies or suddenly starts, and when an accident results from a negligent defect in a highway, the fact that the horse was at the time unmanageable furnishes no defense to an action for the resulting injury.

It was the duty of the defendant to protect the public in the ordinary use of its streets, or at least to use reasonable diligence to do so, and it would be quite too illiberal to hold that the fright of the horse in this case was the cause of the accident. It is a case where it may be said two causes combined to produce the injury, both of which were in their nature proximate. One was the culpable defect in the street, and the other the fright of the horse, for which neither the plaintiff or defendant were responsible. The defendant is, therefore, liable, because the injury would not have been sustained but for such defect. (*Ring* v. *Cohoes*, 77 N. Y., 88; *Gillespie* v. *Newburgh, supra; Kennedy* v. *Mayor, supra.*)

In the consideration of this case the power and duty of the defendant to keep its streets in order for travel has been assumed. No question has been made of this, and there can be none under its charter.

The judgment should therefore be affirmed, with costs.

BARNARD, P. J., concurrred.

PRATT, J. (dissenting):

The facts in this case are undisputed. On May 26, 1883, the plaintiff was driving with a friend along Linden street, in the city

of Yonkers, when they met a bicycle, at which the horse became so frightened that the driver lost control of him, and while so frightened left the road bed, stepped over the gutter and curb and over an embankment, carrying with him the plaintiff.

Linden street is a public highway, and was built by the city of Yonkers in 1873 according to plans and specifications adopted by its common council, which provided for no railing at the point where the horses went over the embankment. The carriage road is thirty feet wide and each sidewalk ten feet wide. Between the carriage-way and the sidewalk there is a curb and gutter; the curb is eight inches high. The carriage-way was macadamized and in good condition. There is no claim that the runaway or the injury was caused by any defect in the carriage-way.

The embankment was about twelve feet high, and no railing or guard had ever been erected on the sides thereof. The plaintiff is an infant and sues by a guardian, appointed by the city judge of Yonkers, to commence an action in the Supreme Court. We think the appointment of John W. Hubbell, as guardian of the plaintiff, was valid, but it is unnecessary to pass upon this question, as assuming that the city judge of Yonkers had no power to make the order, the judgment is not impaired or affected thereby, and the court can direct the appointment of a guardian *ad litem* without prejudice to the proceedings already had. The charter of the defendants seems to impose the duty upon the city of putting up railings or guards at dangerous and exposed places in the public streets, and the jury has found that this place, where the accident took place, was dangerous and exposed, and that it was the duty of the defendant to guard the same.

The first question to be determined is whether there is any evidence in the case to submit to the jury from which such an inference could be drawn. It is conceded that the plans for this street were adopted by the common council of the defendant, and no fence or guard was provided for, and the street was constructed and opened in pursuance of such plans. The adoption of the plan was a legislative or *quasi* judicial act on the part of the common council, and involved a determination as to its necessity, requisite capacity and what protection was necessary to those using it. And for a defective plan or an erroneous estimate of the public needs no civil action can

be maintained. It is not for a jury to say that the defendant shall be held liable for the failure of the common council to give the public more complete protection. The principle is established by a long line of decisions following the case of *Mills* v. *City of Brooklyn* (32 N. Y., 489): "that negligence is not to be predicated upon an error in a plan adopted by a municipal corporation for making public improvements under its charter. (*Hines* v. *Lockport*, 50 N. Y., 236; *Urquhart* v. *Ogdensburgh*, 91 id., 67; *City of Lansing* v. *Toolan*, 37 Mich., 152.) But even if it should be held that this case did not fall within this rule, we think there is another objection fatal to the recovery herein. The plaintiff failed to introduce any proof that the want of a railing was the primary cause of his injury. The primary cause was the fright of the horse at seeing the bicycle, and so long as the primary cause continued in force, there was no certainty as to any other cause for the injury. The law looks only at the proximate cause, and the fact that the accident happened to occur at a point where there was a defect, does not warrant the inference that it would not have occurred but for the existence of such defect. The defendant could not be held, as matter of law, to anticipate that a horse would become frightened and unmanageable, and take precautions to prevent all injury resulting therefrom.

Judge SHEPLEY, in *Moore* v. *Abbott* (32 Me , 46; quoted in *Moulton* v. *Sanford*, 51 Maine, 131), says: "No proof can establish the fact that the damage would not have been sustained but for the defect. * * * It is argued that if a traveler's horse becomes unmanageable he needs a good road all the more, * * * but under such circumstances no perfection in the road can insure his safety." * * * They, the town, "are not bound so to make their roads that travelers shall be safe when their horses are frightened and unmanageable. If they need a more perfect way at such a time, it is because they are involved in a danger not caused by any neglect of the town." This principle is well established (*Titus* v. *Northbridge*, 97 Mass., 258, also, 266; *Kennedy* v. *The Mayor, etc.*, 73 N. Y., 368) and is decisive of this case.

The judgment should be reversed and a new trial granted, costs to abide event.

Judgment and order denying new trial affirmed, with costs.