EMILY CLARK, RESPONDENT, v. THE CITY OF ROCHESTER, APPELLANT.

*A municipal corporation is liable to one upon whose lands it conducts surface water wrongfully diverted from its natural channel — evidence — when testimony as to the illness of persons living in a house is admissible as bearing upon rental value.*

A street in the city of Rochester, known as Edward street, which ran in a northerly direction until it terminated at a high, tight, board fence at its north end, was, pursuant to an ordinance of the common council of the city, duly graded and otherwise improved, a gutter nine inches below the sidewalks being constructed on each side. The plaintiff was the owner of a lot on the west side of Edward street, the northerly line of which was the north line or end of the street, upon which was a dwelling-house, occupied by her, and also a barn. Before the improvement was made, the surface water from the territory lying easterly of said street, and the drainage from two streets running to the east side, but not crossing Edward street, passed over Edward street to the west and south of the plaintiff's premises.

After the improvement was made, this surface water and drainage were collected in the gutters and conducted to the north end of Edward street, opposite to the premises of the plaintiff, where they spread out over the surface of the street and there remained, being covered with slime and emitting offensive odors. Heavy showers of rain caused this substance to flow over the sidewalk and upon the plaintiff's premises, flooding the cellar of her dwelling-house, washing out the bed of the driveway, and so polluting the water in the well upon the premises as to compel her to discontinue the use thereof.

*Held,* that the act of the defendant in collecting this water and conducting the same in gutters and discharging it upon the premises of the plaintiff, was an unauthorized invasion of her property, and that the collection of the stagnant water in front of her premises, preventing the beneficial enjoyment thereof, created a private nuisance which entitled the plaintiff to maintain an action to recover the damages caused thereby.

The cases bearing upon this question, collated and considered by CHILDS, J.

Upon the trial, testimony was offered by the plaintiff, and received under the objection and exception of the defendant, tending to show that the plaintiff and other inmates of her dwelling had suffered from illness occasioned by the deposit

of unwholesome matter upon her premises by the flood of water complained of. The testimony was received as bearing on the question of the rental value of the plaintiff's premises, and not for the purposes of founding any claim for damages by reason of such illness.

*Held,* that it was not error to receive this testimony.

APPEAL from a judgment entered upon the verdict of a jury in the Monroe County Court, and from an order denying a motion for a new trial.

In about the month of May, 1882, Edward street, in the city of Rochester, was improved in pursuance of an ordinance of the common council. The grade of the street was established and the improvement completed, in all respects, in accordance with such ordinance. Edward street runs in a northerly direction and at that time terminated, at a high, tight, board fence at the north end. Plaintiff is and was at the time of such improvement, the owner of the premises No. 37 Edward street, situate upon the west side of said street, the northerly line thereof being the north line or end of said street. Upon said premises was a dwelling-house occupied by plaintiff, and also a barn. Two streets to wit, Hudson park and Gilmore street intersect said Edward street upon the east side thereof within the distance of about 400 feet southerly from the north end of Edward street. These streets, Hudson park and Gilmore are not continued west of Edward street. The improvement of Edward street consisted in grading the same and in constructing a plank sidewalk on each side thereof. In grading, depressions were filled at some points and at others filling was put in so that when the work was completed the street from Hudson park north to the end thereof had a uniform grade, with a gutter upon each side, nine inches in depth below the sidewalk and the crown of the street at the center thereof. Before the improvement of Edward street the surface water from the territory lying easterly of said street, and the drainage from Hudson park and Gilmore street, passed over Edward street to the west and south of the plaintiff's premises. After the improvement of Edward street the surface water from the lands east thereof, and north of the south line of Hudson park and the drainage from Hudson park and Gilmore street were collected in the gutters along Edward street, and conducted to the north end thereof and opposite the premises

of plaintiff where they spread out over the surface of the street and there remained, being covered with slime, and emitting offensive odors. Heavy showers of rain caused this substance to flow over the sidewalk and upon the plaintiff's premises, flooding the cellar to her dwelling, washing out the bed of the driveway, and so polluting the water in the well upon the premises as to compel her to discontinue the use thereof.

This action was brought to recover damages for these injuries. The plaintiff recovered a verdict for $300. Defendant's motion for a new trial was denied, and from the judgment entered on such verdict, and from the order denying a new trial, this appeal is taken.

*Ivan Powers*, for the appellant.

*Daniel Wood*, for the respondent.

Childs, J.:

The defendant, by its common council, had the power under its charter to inaugurate and carry out this improvement, and it having been completed in accordance with the plans adopted by such counsel, it is contended by the defendant that the exercise of such power was in its nature judicial or discretionary, and, therefore, the defendant is not liable in damages for any injury sustained by the plaintiff by reason thereof. Numerous cases in this and other States have been cited by defendant in support of this contention. An examination of the leading cases cited will show that while they establish the general rule contended for, that the case at bar is not within the rule.

In *Wilson* v. *The Mayor, etc.* (1 Den., 595) the damages were occasioned by surface water naturally falling upon the plaintiff's premises, but prevented from flowing off by the changes made in grading its streets. The city, it was held, owed no duty to a citizen to furnish drainage for the water naturally collected on his premises, and that no liability resulted from the change in the street grade made under statutory authority.

In *Radcliff's Executors* v. *The Mayor, etc.* (4 Comst., 195), the city regularly laid out and opened a street; afterward they proceeded to grade the street in order to bring it into public use, and

in so doing removed a high bank which constituted a natural support to the premises of an adjoining owner, so that a portion of his land fell. There was no allegation of malice, or want of care or skill. It was held that the adjacent owner could not maintain an action on the case for the damages sustained by him, there being no want of care or skill in the execution of the work. BRONSON, Ch. J., in the opinion in this case, says : " As a general rule, a man who exercises proper care and skill may do what he will with his own property. He may not, however, under color of enjoying his own, set up a nuisance which deprives another of the enjoyment of his property. Nor can he rightfully enter or cast anything on the land of another, unless he have a license from the owner or an authority in law for doing the act. And the absence of a bad motive will not save him from an action." After further illustrating this proposition, the learned judge continues : " The case before us seems to fall within the principle that a man may enjoy his land in the way such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining land-owner. But if that be a doubtful position, there is a class of cases directly on the point in judgment which hold that persons acting under an authority conferred by the legislature to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway."

In Mills v. City of Brooklyn (32 N. Y., 489, p. 495), Judge DENIO says : " The grievance of which the plaintiffs complain, is that sufficient sewerage to carry off the surface water from their lot and house has not been provided. A sewer of a certain capacity was built, but it was insufficient to carry off all the water which came down in a rain-storm, and the plaintiff's premises were, to a certain extent, unprotected. Their condition was certainly no worse than it would have been if no sewer at all had been constructed. So far as the one laid down operated, it relieved the plaintiffs' lot, but the relief was not adequate," and it was held that the corporation was not liable.

The case of Smith v. The Mayor (66 N. Y., 295) related to a sewer. There was no proof of any defect in the sewer as originally

constructed. After a heavy shower the sewer overflowed and flooded plaintiff's premises. It appeared that the overflow was caused by a stoppage of the sewer with sand, etc., washed from the streets. It was held that the corporation could only be made liable for damages upon proof of some fault or neglect upon its part, either in the construction of the sewer or in keeping it in proper repair.

The case of *Lynch* v. *The Mayor* (76 N. Y., 60) was a case where, as stated by Earl, J., " the defendants caused the grade of the avenue to be raised twenty feet above the surface óf the adjoining lands ; that they failed and neglected to provide any means of carrying off the rain-water which fell upon the avenue, or to prevent such water from draining upon the adjoining lands. * * * There is no allegation that defendants, by this work upon the avenue, diverted any stream of water upon plaintiff's lot, or that they *collected surface water into a channel and thus threw it upon such lot*, or that they caused any more water to flow upon the lot than would have flowed there if the avenue had not been raised." The judgment of the General Term, affirming the judgment for defendant, entered on the dismissal of the complaint at the circuit, was affirmed.

It will be observed, from this examination of the cases relied upon by the defendant in support of his claim, that they contain no warrant or authority for a corporation to invade the property of a citizen, or, by the failure to exercise proper care and skill, to create a nuisance, public or private, to the damage of another.

That the act of defendant, in collecting the water from the territory easterly of Edward street, and from Hudson park and Gilmore street, and conducting the same, in a channel or gutter, upon the premises of plaintiff, was an unauthorized invasion of the property is beyond doubt, and it is equally clear that the collection of a considerable body of stagnant water in front of plaintiff's premises, preventing the beneficial enjoyment thereof, as disclosed in the evidence, created a private nuisance.

That the exercise of an ordinary degree of care and skill in the performance of this work would have avoided the damage to plaintiff is apparent.

Edward street was a *cul de sac*. Across the north end thereof

was a high, tight board fence, cutting off all opportunity for drainage over the surface in that direction. Under these circumstances, it manifestly became the duty of the defendant, if it saw fit to collect and conduct a body of water to this point in the street, to provide some manner for disposing of it other than to turn it upon the lands of the plaintiff or to allow it to spread over the surface of the soil and there stagnate until it soaked into the ground or evaporated. It is undoubtedly true that, before this improvement of Edward street was undertaken, the defendant could not have been required to construct a sewer or drain for the purpose of carrying away any of the surface water of this locality; but here they created the necessity for such relief by the failure to exercise such care and skill in the completion of such improvement as was required, and hence it became its duty to provide such relief in some manner, and for the failure to do so it is liable to the plaintiff for such damages as she has sustained by reason thereof. The case shows that it was entirely practicable to dispose of this water in such a manner as to avoid the injury complained of, and that the difficulty has been remedied, since the commencement of this action, by the extension of Edward street to Vose street on the north, a distance of about 100 feet.

This precise question was considered by the Court of Appeals in *Byrnes* v. *City of Cohoes* (67 N. Y., 204), and it was there held, RAPALLO, J., delivering the opinion of the court that: "Diverting the water from its natural course so as to throw it upon the plaintiff's premises, without providing any outlet, and thus injuring his building, was a wrong for which he was entitled to redress. The cases cited on the part of the appellant (the defendant), to the effect that a municipal corporation is not liable for an omission to supply drainage or sewerage, do not apply to a case where the necessity for the drainage or outlet is caused by the corporation itself."

The question was again considered by the same court in *Noonan* v. *Albany* (79 N. Y., 470), and it was held that a municipal corporation has no greater right than an individual to collect the surface water from its lands and streets into an artificial channel, and to discharge them upon the lands of another. To the same effect is *Bastable* v. *Syracuse* (8 Hun, 587). The latest exposition of the law on this subject by the Court of Appeals is to be found in

*Seifert* v. *City of Brooklyn* (101 N. Y., 136). This was an action brought to recover damages caused to plaintiff's premises by defendant's negligence in the construction of a sewer. The defendant invoked the principle, exempting municipal corporations from liability for damages, occasioned through the exercise of judicial functions, by its officers, as a defense to the action. RUGER, Ch. J., in an able and exhaustive opinion, in which the authorities are extensively reviewed says: " Municipal corporations have quite invariably been held liable for damages occasioned by acts, resulting in the creation of public or private nuisances, or for an unlawful entry upon the premises of another whereby injury to his property had been occasioned. This principle has been uniformly applied to the act of such corporations in constructing streets, sewers, drains and gutters, whereby the surface water of a large territory, which did not naturally flow in that direction, was gathered into a body and thus precipitated upon the premises of an individual, occasioning damage thereto." The cases hereinbefore cited, with others, are cited in support of this proposition.

Further quotations in support of the rule contended for by the plaintiff, might be made from the opinion in this case, but sufficient reference has been made thereto to show that the rule established is decisive of the case at bar, and that for the act complained of the plaintiff had a remedy in her action for damages, notwithstanding the general rule exempting municipal corporations, invoked by the defendant.

Upon the trial, testimony was offered by the plaintiff, and received under the objection and exception of defendant, tending to show that the plaintiff and other inmates of her dwelling had suffered illness, occasioned by the deposit of unwholesome matter upon her premises by the flood of water complained of. This testimony was received as bearing on the question of the rental value of the plaintiff's premises, and not for the purpose of founding any claim for damages by reason of such illness. Such was the statement of the judge, made in ruling upon the defendant's objection, and that this was the sole purpose for which the testimony was admitted is made clear by the charge of the judge, who said to the jury: " The only element of damages that you can take into consideration in this action, is the difference in the rental

value of the premises between the time of the creation of the nuisance and the time it was abated;" and, again: "The other matters that have been suggested to you, for instance, the injury to the health of the plaintiff's family, are not to be taken into consideration by you, except as bearing on the general question as to what is the rental value of the premises."

It further satisfactorily appears, from the amount of the verdict rendered, that the jury followed the instructions of the court, and considered only the question of the difference in rental value of the premises, which was the true measure of damages. (*Jutte* v. *Hughes*, 67 N. Y., 267.)

We are of the opinion that the testimony objected to was competent and properly received for the purpose indicated; but if this were not so, the defendant has not been injured thereby, and, therefore, no error was committed requiring a reversal of the judgment.

Other exceptions were taken by the defendant to the refusal of the court to direct a verdict for the defendant, and to the refusal of the court to charge certain requests made by defendant, and to certain parts of the charge as made. We have examined the rulings complained of, and find no error in either.

The judgment and order appealed from should be affirmed.

HAIGHT and BRADLEY, JJ., concurred.

Judgment and order affirmed.