Learned, P. J.
Upon the doctrine of Mills v. Brooklyn (32 N. Y., 489); Hines v. Lockport (50 N. Y., 236); Lynch v. Mayor, etc. (76. N. Y., 60), and Urquhart v. Ogdensburgh (91 N. Y., 67, and S. C., 97 N. Y., 238), we should have no doubt of the correctness of this judgment.
But since the decision in this case Seifert v. Brooklyn (101 N. Y., 136), has been decided and reported. And the-views there stated render it necessary to inquire how they apply to the facts before us.
It is very truly said in the opinion in that case that “the-cases on the subject are by no means harmonious ; ” a remark which may be illustrated by a comparison of the two-decisions in Urquhart v. Ogdensburgh, above cited.
In the Seifert case the facts stated are that the sewer was-built in 1868. A short time after its constrtiction actual use as the court say demonstrated that the sewer had not-sufficient capacity to carry off the accumulations of water and matter turned into it; and that at times of heavy rain or snow the collected sewage being obstructed was forced-through man-holes and inundated plaintiff’s property. These inundations commenced ten years prior to the trial, and increased in severity and frequency. How long before-the commencement of the action is not stated. From the report of the case in 15 Abb., N. 0. 97, it would seem that-these inundations had occurred for six years before the-action was commenced. Yet the corporation continued to build and attach lateral sewers, and thus increase the evil.
It does not appear whether the court held the defendanthable for the original defect of the sewer in being insufficient ; or for the adding lateral sewers after actual proof of such insufficiency But in the report of the case at general term it is stated that the sewer was originally of sufficient size. While the court of appeals imply in their opinion that it was originally insufficient.
In one place the opinion of the court of appeals states that the corporation is hable after notice and an omission to remedy the defect. It also says that the corporation was liable for the defects of the sewer, on the principle of Noonan v. Albany (79 N. Y., 470).
Now in the present case we have a sewer constructed in 1875 ; sufficient, as is found, to carry all ordinary sewage, including surface water ; such ordinary flow including surface water being less than one-sixth of the capacity of the sewer. It can hardly be said then that there was a defect-in the construction ; certainly not such a defect as the defendant could by any skill discover.
Owing to the construction of lateral sewers, intercepting-surface water, less surface water has been carried into the-vicinity of plaintiff’s property than was formerly so carried,. *387 but the surface water accumulated more rapidly than formerly.
In June, 1882, there was an extraordinary freshet, greater than ever known by persons then living. As a result, the sewer and the old brook were filled to their utmost capacity, and streets in plaintiff’s vicinity were submerged. The water from the streets found its way to plaintiff’s property. The pressure in the sewer kept back the water in the eighteen-inch pipe by which plaintiffs had connected their artificial lake with the sewer; the lake was raised some two feet, and the water therefrom and from the adjacent high ground of plaintiff ran on plaintiff’s grounds and into the basement of plaintiff’s building. The water was contaminated with sewage filth, which, as the water subsided, remained and injured the grounds of plaintiff Another similar, but less violent, freshet took place the same month. There is no evidence of any other.
Much of the damage, it will be seen, came from the backing of the water in the sewer through plaintiff’s eighteen-inch pipe, made for the discharge of water from plaintiff’s artificial lake, and voluntarialy connected by plaintiff with this sewer. Very possibly if there had been no such lake, but only drains to carry off the water of the swampy land, much of the injury would not have happened. Searing v. Saratoga Springs, 39 Hun, 307.
This action was commenced soon after these freshets. ■ There are many respects then in which this case differs from that of Seifert. The sewer was of abundant size. No repeated occurences had shown a defect. It does not appear that the action of the lateral sewers had shown the insufficiency of the main sewer. Indeed it would appear that the lateral sewers, or some of them, had cut off the water which would otherwise have passed down by the plaintiff’s premises. The immediate cause of plaintiff’s damage was the extraordinary freshet.
We think then that this case is quite different from that of Seifert. We cannot say that there was a defect in a sewer which had capacity to carry six times the ordinary sewage and surface water. Actual use had shown no defect; nor had the lateral sewers rendered the main sewer insufficient. The defendant had had no notice of any defect. And it is difficult to know what remedy the defendant ought to have adopted, which would guard against an extraordinary freshet. Sprague v. Worcester, 13 Gray (Mass.). 193.
If the defendant had constructed a sewer of more than sufficient capacity for all ordinary occasions; if the defendant had never been notified by the occurance of an accident that the sewer was insufficient; if it proved insuf *388 ficient only for an extraordinary freshet riot to be expected, then no blame can attach to the defendant. And the defendant is hable only for some negligent or wrongful act.
Whether or not liability might arise if repeated inundations should show the insufficiency of the sewer, we need not inquire.
Judgment affirmed, with costs.
Mayham, J., concurs; Land on, J., not acting.