J. W. HORTON & WIFE v. MAYOR & CITY COUNCIL OF NASHVILLE.

<div style="float:right">4L 39<br>116 242</div>

CHANCERY COURT. *No jurisdiction to compel municipal corporations to exercise legislative discretion. Damages.* The Court of Chancery has no power to compel a municipal corporation to exercise a power left to its legislative discretion, and therefore, a bill to coerce the construction of a sewer in a particular direction cannot be entertained; nor has the Court jurisdiction of a claim for damages, by reason of a defective sewer, except as an incident to some recognized ground of equity.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville J. M. QUARLES, Sp: Ch.

W. H. HUMPHREYS and J. W. HORTON, for complainants.

Summary of brief of .W. H. HUMPHREYS, for complainants :

The bill charges the flooding of cellars and the contamination of the atmosphere, from time to time, of houses and street, by the bursting and leaking of a sewer constructed by the city authorities.   This is an indictable nuisance, whether committed by individuals, private or municipal corporations, by Code and by common law.   Code, secs. 4884, 4913, 4915, " deposit of filth, offal and noisome substances." Bishop title Nuisance; *People* v. *Albany.* 11 Wend., 539, pond of putrid matter. *State* v. *Shelbyville,* 4 Sneed, 176; slaughterhouse, 6 Best & Smith, 609; stagnant sewage in canal; 19 Howard, 290, citing conviction of Boston of sewer nuisance: Wood, 488.  The court orders the sheriff to abate on conviction, at the defendant's expense.  Code, secs. 4834, 4913, 4915; 6 Parker, 22.  Municipal corporations may abate without conviction by order to police force: 18 Ark., 252. Where an indictable nuisance exists there is a remedy by action by parties injured: 1 Black, 39. And a remedy by abatement by bill 9 Moak, 530. Actions may be maintained for improper grade of sewer, improper dimensions, want of repairs, or obstructions resulting from design or negligence, from which defects injury necessarily results to individuals.  " The right to construct a sewer does

not include the right to create a nuisance;" they
must be so constructed and so managed as not to
create a nuisance; 18 Am., 187, Mass. "When
a nuisance appears there is an excess of jurisdiction:"
Per Cocley, 35 Mich., 300; 74 N. Y., 265; 66 N.
Y., 297; 22 Am., 471, 47 Ga., 263; 108 Mass.,
265· 50 Mo., 510; 19 How., 290; 30 Ind., 237:
104 Mass., 13.    The structure itself is *ultra vires.*
The city authorities had no right to appropriate
private property for the construction of a sewer
when they had a practicable and reasonable line
to the designated point by street and alley, costing
nothing and injuring no one,   It was a trespass
and *ultra vires*: 15 Barb., 210; 30 Barb., 494; 8
Moak., 837; 2 Swan, 540: Story, 927, 955; Daniel,
1630; 4 M. & C., 251.   This to be ascertained by
survey: 8 Rich. Eq., 211; 6 Cush., 65; 2 Hum., 554,
471.    Individuals, private and public corporations,
boards of health and commissioners of sewers and
other public functionaries, are subject to be re-
strained from creating or continuing nuisances.  The
right to pure air and pure water are primary rights,
and entitled to constitutional protection.   Birming-
ham, Leeds and other cities restrained from dis-
charging contents of sewers into streams.  Leeds
pleaded that it had no other means of disposing of
its sewage than by discharging the contents of its
sewers in the Ayre, as it had done.   This was
held no defense for violation of substantial legal
rights.   Navigation of the Thames protected from
obstruction by commercial fixtures erected by the

city of London; North River protected against authority of the city of New York, and commercial fixtures ordered to be removed as a nuisance; license of the city of Charleston held no protection for cotton press; New York City prohibited from erecting depot for emigrants on city property, or permitting it to be done; 3 Barb., 225; Story, 925; 4 K. & D., 525; 2 Mylne & C., 129; 26 N. Y., 154; 11 Rich. Eq., 211. The liabilities of cities are the same as those of individuals, by action by indictment and by bill: Willard, 400; Wood, 472, 473, 474. The decree may be merely prohibitory, or it may prescribe what shall be done, as that a ditch be filled: 11 Cal., 104; that a dam be reduced in height two feet: 2 Sumner, 297; or removed entirely: 1 Tenn., 199; 1 Hum., 133; that water pipes laid down be taken up: 8 Moak., 40. that a stream diverted be restored in twelve months and that plaintiff have damages for the diversion: 40 N. Y., 191; that a draw be constructed of specified dimensions in a bridge to open navigation: 13 How., 630; that a stairway in the street be prohibited and balcony be removed: 6 Heis., 440; that county courts opening a "shunpike" road be compelled to close it as a nuisance to a franchise: 8 Hum., 354; that corporate authorities shall not deliver sewage into a stream, and that they shall close a sewer: Daniel 2303, 1638; and so it is contended municipal authorities can be compelled to extend a sewer, not on the ground of public expediency, but on the ground that the sewer creates

a nuisance, and that the extension, so far as is necessary to abate that nuisance, is the best means of accomplishing the object, as shown by the engineer's report. When a sewer necessarily creates a nuisance, as demonstrated by time, the abatement may necessarily compel a modification of the sewer. It is an unlawful structure and *ultra vires.* It is no invasion of discretionary power, for they have no discretion to violate the rights of property and of the public. The jurisdiction is "a valuable superintending jurisdiction to confine public functionaries and public corporations within the boundaries of law." *Frewin* v. *Lewis,* 4 Mylne & C., 254; Story, 955; A. Daniel, 1630; Wood, 754. The prayer for abatement and the prayer for general relief contained in the bill are prayers for all the relief a court of chancery is competent to give in the premises, extension included; and they are prayers for all the writs authorized by the Code, such as writs of fi. fa. for damages, writs for possession, and writs of injunction, without any special application therefor; for such writs are writs of execution, and if special application were necessary the bill could be amended at the hearing: Code, 4488; Daniel, Cooper's ed., 398, 1614; 12 C. C. Green, 155, 189; Hicks., 221; 6 John Ch. 1; 4 Page, 219, 248. Bills for unliquidated damages are not entertained, but when a nuisance is abated, or waste or trespass restrained, or contracts enforced specifically, or trusts enforced, or dower decreed, or other equities are enforced, the court may decree dam-

ages, liquidated or unliquidated, in order to close
the litigation   The Act of 1877, ch. —, does not
repeal this jurisdiction over damages, but was in-
tended to leave that jurisdiction as it was before:
Story, 794, 797, 1314, 516, 527; 40 N. Y., 191; 8
Rich Eq., 40; 1 Hum., 1; Wood, 778; 43 N. H.,
249, 499.

The Legislature having authorized a trial of facts
by a jury in the chancery court as in the circuit
courts, when demanded, and prohibited jury trials
in chancery and circuit courts, when not demanded,
and authorized the court to decide questions legal
and equitable in cases of which it has jurisdiction,
it would seem that the court had authority to de-
cree damages, though the equitable relief be not
granted. This is the law in England, and is stated
by high authority to be the law in two-thirds of
the States. Code, 4455, 3008; 2 Johns & H., 555;
1 Degex, 488 r 8 Moak, 837; 13 Moak, 564.

Complainants cannot be deprived of their right
to abate an existing indictable nuisance by con-
tamination of the atmosphere, by the fact of its
long continued existence. The structure is illegal
as to the public and as to individuals: Wood, 725,
828: 1 Bax., 55; 76 N. C., 676; 27 Texas, 304;
9 Wend., 315; 6 Parker, 763. Nor can they be
deprived of this right by acquiescence short of
twenty years in a case of private nuisance: 1 Bax,
355; 1 Hum., 410; 11 Hum., 166; if at all where
the air is contaminated by a sewer: Story, 929, D.
Nor can assent given for the construction of the

sewer constitute a defense, unless it was given with a knowledge that a nuisance would be created by the structure: Wood, 986, 524, 360, and authorities there cited.

W. K. McAlister, for defendants

Cooper, J., delivered the opinion of the Court.

The Chancellor overruled a demurrer to the bill, and the defendant appealed.

It appears from the bill as amended, and as it comes before us, that complainant, Anna E. Horton, wife of J. W. Horton, became, on February 20, 1875, the owner for life, with remainder to her two children, by deed of gift from her father, of an improved lot on Broad street, in Nashville, fronting twenty-three feet eight inches on Broad street, and running back one hundred feet. In the year 1872, the corporate authorities of the city constructed a sewer across Broad street, and under the house erected on said lot, and other houses adjoining thereto, upon a lot in the rear, and thence by open drain into Wilson's Spring branch.

This sewer was at first sufficient for the purpose intended, but the corporate authorities from time to time constructed other sewers and surface gutters, and connected them with the original sewer, whereby the latter became the only means of escape for the water and foul drainage of a large additional territory, the rainfall of which territory

would not naturally flow upon the property in question, but would find its way to the river in other directions. The result is that the volume of drainage, in hard rains, breaks open the sewer under the house, injuring the walls and articles stored therein, rendering the cellar valueless, and, by filling the upper rooms with foul gases and effluvia, making the building unhealthy, and unfit for either residence or business. The sewer has also been permitted negligently, from time to time, to become obstructed, so that the property of complainant, and other property on both sides of Broad street, were flooded by sewage and injured. On September 30, 1876, the city engineer called the attention of the corporate authorities to the insufficiency of the sewer for the drainage thrown upon it, and to the necessity of a new sewer along Broad street to the river. On March 26, 1878, the Mayor of the city, in a message to the common council, called their attention to the condition of the sewer, and recommended the construction of a new sewer along Broad street to the river. And just before the filing of the bill, on October 1, 1878, the complainants petitioned the corporate authorities for a removal of the nuisance and for damages, without avail. The prayer of the bill is that the corporate authorities be, by the final decree, compelled to construct a sewer along Broad street to the river. and such other side drains as may be necessary to secure the health of the city, and remove the nuisance created by the defective sewerage mentioned,

and that complainants be allowed such damages as may be just and proper for the injuries sustained.

The main object of the bill is to compel the city, by mandatory decree, on final hearing, to construct a new sewer from complainant's lot along Broad street to the river, a distance, as shown by the bill, of 1,660 feet. The ground of demurrer assigned to this part of the relief sought is, that the building of a public sewer by a municipal corporation is the exercise of a legislative discretion, which the Court will not control. And to this effect are the authorities.

The reason for the rule has been admirably stated by Denio, C. J., in *Mills* v. *City of Brooklyn*, 32 N. Y., 495. "It is not the law," he says, "that a municipal corporation is responsible in a private action for not providing sufficient sewerage for every or for any part of the city or village. The duty of draining the streets and avenues of a city or village is one requiring the exercise of deliberation, judgment and discretion: It cannot, in the nature of things, be so executed that in every single moment every square foot of the surface shall be perfectly protected against the consequence of water falling from the clouds upon it. This duty is not, in a technical sense, a judicial one, for it does not concern the administration of justice between citizens, but it is of a judicial nature, for it requires, as I have said, the same qualities of deliberation and judgment. It admits of a choice of means, and the determination of

the order of time in which improvements shall be made.   It involves, also, a variety of providential considerations relating to the burdens which may be discreetly imposed at a given time, and the preference which one locality may claim over another.   If the owner of property may prosecute the corporation on the ground that sufficient sewerage has not been provided for his premises, all these questions must be determined by a jury, and thus the judgment which the law has committed to the city council, or to an administrative board, will have to be exercised by the judicial tribunals. The court and jury would have to act upon a partial view of the question, for it would be impossible that all the varied considerations which might bear upon it could be brought to their attention in the course of a single trial.   Such a system would be as vexatious in practice as unwarranted in law."   The distinction between the political or discretionary powers of the governing body of a municipal corporation and the exercise by the corporate authorities of ministerial powers is everywhere recognized.   Dill. Mun. Cor., § 753, 778, and cases cited.

No authority has been produced tending to show that a Court of Chancery has ever undertaken to compel a municipal corporation to construct a sewer in a particular direction, or of specified dimensions. If such a power exists in the Court, it may be exercised to control the discretion of the local legislature in opening, grading and improving streets,

or in any other matter about which that body may be authorized to legislate.    The corporate functions would no longer depend upon the deliberate action, after consideration of all the circumstances, including the ways and means, of the municipal council, but upon the verdict of a jury or the decree of a court.    Both reason and authority are against the power of the Chancery Court to grant the relief sought.

The remaining object of the bill is to recover damages for the injury sustained by the complainants by the overflow of the sewer, either by reason of its insufficiency in size to carry off the drainage, its defective construction, or its being negligently permitted to become obstructed.

Although the city authorities are entrusted with a discretion in regard to constructing drains and sewers in the first instance, yet when they have constructed them it is probably their duty to keep them in proper repair and free from obstruction. *Mayor of N. Y.* v. *Farze*, 3 Hill, 612; 1 Denio, 601; *Hutson* v. *Mayor of N. Y.*, 9 N. Y., 163; *Barton* v. *City of Syracuse*, 36 N. Y., 54; *McCarthy* v. *Syracuse*, 46 N. Y., 194; *Meares* v. *Wilmington*, 9 Ind., 73.    And they are liable in damages for a neglect of these ministerial duties by which individuals suffer injury.    It is certain also that equity has jurisdiction to enjoin and abate nuisances. 2 Story Eq. Jur., sec. 925; 2 Dan. Ch. Pr., 1635. And this jurisdiction is not interfered with by the

provisions of the Code conferring on the courts of law the power to abate nuisances in proper cases: *Lassater* v. *Garrett,* 4 Bax., 368. The con- tinuance of a nuisance is also a new offense; *Nashville & Decatur R. R. Co.* v. *State,* 1 Bax., 55. But the jurisdiction of equity to give dam- ages is incidental to its jurisdiction to interfere by injunction, or upon some recognized ground of equity. 2 Story Eq. Jur., § 796, 924. A suit for damages merely cannot be maintained, and is not authorized by the Act of 1877, ch. 97, which ex- pressly excepts from the new jurisdiction conferred all causes of action for injuries to property involv- ing unliquidated damages.

The bill before us does not ask either a temporary or perpetual injunction of any kind. Nor is it easy to see how it could. The sewer complained of must have been constructed with the knowledge and acquiescence of the owners of the property at the time. The complainants have, perhaps, neither the right nor the inclination to abate it *in toto.* What they want and ask is a new sewer altogether and damages for the injuries done. The former the Court cannot give, for the reasons stated, and the remedy for the latter is at law.

Reverse the decree and dismiss the bill with costs.