## JOSEPH BARTON *v.* THE CITY OF SYRACUSE.

*Municipal Corporation—Liable for obstruction in its Sewers.*

A municipal corporation is liable for damages sustained by a Plaintiff caused by obstruction occasioned to the flow of water in the public sewer, by reason of which the Plaintiff's premises became flooded by water thrown back through his, Plaintiff's, drain.

BOOKES, J.—This is an action in a case for negligence, in which the Defendant is charged with culpability in omitting to keep a sewer in proper repair, and in suffering it to become filled with dirt and rubbish, by reason of which the flow of the water was impeded, causing it to set back through the Plaintiff's drain into his cellar, to the injury of his property.

The referee, to whom the case was referred to hear and determine, directed judgment for the Plaintiff, which judgment was affirmed at General Term.

By the city charter the mayor and common council were authorized and directed to construct sewers through the city, and to keep them in repair.

They accepted and entered upon the performance of this duty, and constructed sewers along such of the streets as were deemed appropriate, with a view to a favorable and healthful drainage.

The expenses were assessed upon the property benefited, as provided by the charter, and their supervision and control were properly assumed by the city government. Under this condition of authority and duty the municipal corporation were bound, through the proper officers, to a faithful and prudent exercise of power, and carelessness and negligence in that regard created a liability, which might be enforced by any one suffering damages therefrom.

So the law is firmly established that, in constructing sewers and in keeping them in repair, a municipal corporation act ministerially, and having the authority to do the act, is bound to the exercise of needful prudence, watchfulness, and care.

The authorities in support of these principles are too numerous

and familiar to require particular comment (The Mayor v. Furze, 3 Hill, 612; Hutson v. The Mayor, &c., 9 N. Y. 163; The Rochester White Lead Co. v. The City of Rochester, 3 N.Y. 463; Conrad v. The Trustees of Ithaca, 16 N. Y. 158; Mills v. The City of Brooklyn, 32 N. Y. 489). It is insisted that the sewer, in this case, was constructed exclusively for surface drainage.

This, however, is obviously a mistaken assumption. The charter evidently contemplated all the usual advantages to result from a system of city sewerage, embracing alike the health and convenience of the inhabitants.

The system contemplates general drainage of all accumulations of water and soluble matter; not only the speedy discharge of such as would otherwise stagnate on the surface, or accumulate from percolation and other causes in cellars, but also the ready removal of impurities incident to populous localities, which necessarily collect in a greater or less degree in large tenements.

In this way a sewer becomes subservient to health and comfort, and is made common to all who own or occupy adjacent property; hence, the expense of its construction is charged on such property as a positive benefit.

In this view it becomes the right of every one occupying premises along the line, under proper restrictions for general protection, to use it, by inserting a drain from his lot. In this case the city charter, or ordinances, recognizes and concedes the right thus to use it, as it imposes a penalty for digging to connect with a sewer without first serving a notice of such intention (chap. 9, sec. 2). It seems, therefore, that the right of the Plaintiff to connect his drain with the public sewer is placed beyond possible question. But it is insisted that the privilege to drain into the public sewers was subject to certain conditions, which were not complied with by the Plaintiff; that he, in fact, violated an ordinance of the city in connecting his drain with the sewer, and incurred a penalty; hence he cannot recover in this action. It seems very plain that it was intended that permission to connect drains with the sewers should be obtained from the corporation, or from some of

its officers.    Sec. 6 of title 5 of the charter requires the city
surveyor and engineer to keep a record of all sewers established by
the common council.    Sec. 13 makes it the duty of the super-
intendent of the streets to supervise the building and repairing
of sewers; and sec. 2 of chap. 9 of the ordinances and by-laws
makes it a penal offence to tear up any pavement, street, or cross-
walk, or to dig any hole or trench in any street, without permission
from the common council or mayor, and further imposes a penalty
for omitting to give notice to the clerk of the intention to dig, if
for the purpose of connecting with a sewer, or water or gas-pipe,
giving the location and name of the one, to the end that the clerk
might keep a register of the same.

Sec. 131 provides that whenever permission is given in any
case to lay any drain, or to dig, or take up any pavement or side-
walk, for the purpose of making or repairing any drain, &c., the
same shall be done, unless otherwise specifically ordered by the
common council, under the direction of the street superintendent,
and any refusal or neglect to conform to his orders and directions
was made penal.

By sec. 132 it is provided that no persons shall open or pen-
etrate any common sewer for the purpose of making a drain
therewith " without the consent of the street superintendent, or a
member of the common council, under a penalty of five dollars
for each and every offence."

Thus it is seen that consent was a prerequisite to the opening
of a trench in the street, or to the opening or penetrating to a
sewer for the purpose of making a drain therewith, and any vio-
lation of such duty was a penal offence.

These two were important and wholesome regulations.    But
who had the right to give the requisite consent?    From sec. 2 of
chap. 9 it is plain that permission from the common council or
mayor would be a protection and sufficient authority; and it is
also fairly inferable, from the provisions of sec. 132, that the
street superintendent, or a member of the common council, might
also give such consent.

These ordinances are not entirely harmonious, but I think may

be so construed as to carry out this general purpose without absolute conflict. It was undoubtedly intended that no opening in the street or interference with the sewers should be suffered except under the sanction and approval of the city authorities. This was essential to the enjoyment and protection of public rights. But notice of the intention, and permission from a competent source, met and answered all the exigencies of the case. The street superintendent could then, if necessary, assume the charge of, and direct the work. Now it is true that by sec. 2 of chap. 9 it is made a penal offence to excavate in the street, without permission from the common council or mayor, and by sec. 132 it is made penal to open or penetrate a sewer, for the purpose of connecting a drain therewith, without the consent of the street superintendent, or a member of the common council.

These ordinances should be read together, and, when so read and construed, they mean that permission to excavate or dig in the streets must be obtained from the common council or mayor; except that, when a person desires to open or penetrate a sewer for the purpose of connecting a drain therewith (which necessarily implies the breaking of the surface and digging), the consent of the street superintendent, or of a member of the common council, shall be sufficient authority so to do.

This, too, seems to have been the practical construction given these sections by all parties; for in most, if not in all cases, notice to, and permission by, the street superintendent was acted upon and accepted as sufficient. And it evidently was so for all practical purposes, as it devolved on the street superintendent to see that the streets were not unnecessarily obstructed, and that connection with sewers were properly made.

It seems, therefore, that the Plaintiff incurred no penalty— hence was guilty of no unlawful act—in opening or penetrating the sewer for the purpose of connecting his drain therewith, inasmuch as he had permission so to do from the superintendent of the streets.

But it is insisted that the Plaintiff was bound to give notice to the clerk of his intention to dig in the street for the purpose of

connecting his drain with the sewer, and that he incurred a penalty for omitting so to do.

The act made wrongful by the latter clause of this section (sec. 2) is the neglect to serve the notice, the object of which was to enable the clerk to keep a register of the connection. The omission to give the notice did not make the connecting with the sewer unlawful. It therefore did not make the Plaintiff a wrong-doer in that regard.

The cases cited by the Appellant's counsel (7 Wend. 276; 14 J. R. 273; 1 Allen, 403; 10 Met. 363; 3 Allen, 407; 3 Denio, 226) are not applicable to this case.

It is also insisted that the recovery is erroneous because there was no proof of notice to the corporation of the needed repair before the injury complained of occurred. Such notice, however, was not necessary in this case. The injury here resulted from an omission of duty—a neglect to do an act which it was incumbent on the defendant to perform.

It differs from the case of Griffin v. The Mayor of New York (9 N. Y. 456), where the obstructions were placed in the street by third parties. The distinction is well marked by Judge Denio in the case cited.

Other objections to the recovery in this case are urged upon our consideration, but they were well answered in the opinion of Mr. Justice Allen in the Supreme Court (37 Barb. 292).

The judgment should be affirmed.

All concur except PORTER, J., who, having been counsel, expressed no opinion.

Affirmed.                                JOEL TIFFANY,
                                        State Reporter.