ALLEN R. SEAMAN *v.* THE MAYOR, ALDERMAN AND COMMONALTY
OF THE CITY OF NEW YORK.

A municipal corporation cannot be held liable for injuries resulting from an obstruction placed in a highway by strangers, of which they had no notice, express or implied.

The lessee of the wharfage of a public pier, for the protection of the pier and of his vessels, sunk spiles in the bed of the stream in front of the pier, to which they were fastened with bolts and chains. Becoming unfastened, the spiles fell away from the pier, and projecting out into the stream, were covered at high tide. In an action against the city corporation to recover damages sustained in consequence of the plaintiff's propeller running on such spiles: *Held*, error, to refuse to charge the jury that their verdict should be for the defendants if the latter had no notice of the obstruction, express or implied. The spiles were not a part of the pier as a permanent structure, which the corporation was bound to keep in repair; but were placed there by the lessee, who, as to the corporation, was a stranger, for his own benefit and advantage.

APPEAL by the defendants from a judgment entered on a verdict at trial term.

The action was brought to recover damages sustained by reason of the defendant's negligence.

The defendants, as owners of Pier No. 46, North river, in March, 1860, granted the wharfage which becomes due for the use of said pier to one Daniel Darrow, for the term of five years, from May 1, 1860. Darrow covenanted, in the lease or grant, to keep the pier in good repair at his own cost.

It was also covenanted that no right to occupy the surface or top of the pier, or to receive compensation for such occupation should be conferred by said lease, and power to build new piers or bulkheads, and repair wharves, was expressly reserved to the corporation. The New York Mail Steamship Company purchased the lease or grant of Darrow, and since the year 1863, and at the time of injury to plaintiff's vessel, which was the subject of the action, were using the pier for the ordinary business of a steamship company, having the berth for their ships at the end of the westerly extremity. In the year 1863, or early in 1864, the Steamship Company caused a number of spiles to be driven at the outer corner of the pier, fastened to it by chains and bolts. These spiles were intended to be fenders

to protect the boats of the company and the wharf from injury by contact when mooring there.  On the trial, the president of the company testified that he had thought they had a verbal permission from the defendants to drive the spiles there, if not, it was the common custom.

Two of these spiles became loosened and detached from the pier and fell forward, so that at high tide they were covered and concealed by the water.  At what time they became so detached did not appear.  On the 2d of September, 1864, the propeller "Samuel Stanton," belonging to the plaintiff, while passing along the end of the pier at high water, ran upon the projecting spiles.  About the middle of August, 1864, the defendants took possession of the pier to rebuild, and at the time of the accident their employees were repairing the pier at the inner or shore end.

To recover the damages so sustained, the plaintiff brought this action and recovered.  From the judgment so obtained, the defendants appealed to the general term.

The objections are sufficiently stated in the opinions.

*Richard O'Gorman*, for appellants.

If it was the duty of the defendants to remove the spiles, or keep them in safe and proper condition, yet they are not liable to the plaintiff in damages unless it is proven that they were notified of the improper and unsafe condition thereof; or that such improper or unsafe condition had continued for so long a time that notice may be presumed (*McGinity* v. *The Mayor*, 5 Duer, 674; *Hart* v. *City of Brooklyn*, 36 Barb. 227; *Griffin* v. *The Mayor*, 9 N. Y. 459).  In all the cases where municipal corporations have been held liable for damages sustained in consequence of neglect to keep highways in safe condition, notice, either express or implied from lapse of time, has been proven, or it has been shown that the corporation has rendered the highway unsafe by its own act (*Storrs* v. *Utica*, 17 N. Y. 104; *Davenport* v. *Ruckman*, 10 Bosw. 20).  In *Taylor* v. *The Mayor*, (4 E. D. Smith, 559), the defendants were held liable for damage sustained in consequence of non-repair of the *surface of the pier*.  In *Moody* v. *The Mayor* (43 Barb. 282), the corporation were held liable for damages occasioned by the

improper construction of the *body of the pier*, so that a portion thereof under water projected in such a manner as to injure the plaintiff's vessel. In both those cases, the condition *of the pier itself*, produced by the acts of the corporation, was the cause of the injury. In the case at bar the plaintiff goes far beyond the doctrine of those cases, and seeks to hold the corporation liable for the unsafe condition of erections placed in the water alongside the pier, by a stranger, for his own benefit.

*Edwards & Odell*, for respondent.

The spiles which caused the accident were appended to the pier with the knowledge and by permission of the defendants. Besides, section 52 of the Ordinances of June 20, 1859, imposes upon the "Superintendent of Wharves" the duty of exercising " a constant inspection and supervision of the condition of the public wharves, piers, and slips, and of the erection and repairing of the public wharves and piers." The presumption is, that he knew what additions were made to this pier by the Steamship Company (*Arent* v. *Squire*, 1 Daly, 347). There is no proof that he, or any person on behalf of the defendants, made objection. The spiles became part and parcel of the pier. The defect was, therefore, a "defect in the pier itself." And even if the Steamship Company *created* the nuisance, the defendants *maintained* and *continued* it a long time after they resumed possession of the pier.

Proof of actual notice to defendants of the obstruction was not necessary. The law charges them with notice (*Barton* v. *Syracuse*, 36 N. Y. 58; S. C. 37 Barb. 292).

BRADY, J.—The defendants are the owners of pier No. 46, North river. In March, 1860, they granted to Daniel Darrow the right to collect wharfage for the use of the pier for the term of five years from the first of May, then ensuing, he covenanting to keep it in good repair. This grant was assigned to the New York Mail Steamship Company, and on July, 1864, the defendants agreed to extend to them the same rights for a period of ten years, and to rebuild the pier. About the middle of August, 1864, the defendants gave the company notice that they would take possession of the pier to

rebuild. After the Steamship Company procured the assignment from Darrow, and early in the year 1864, they caused spiles to be driven at the end of the pier, which were intended to be stationary, having been fastened with bolts and chains. They were placed at the point designated for the benefit of the company, and not for the defendants' benefit or advantage. They had nothing to do with the corporation. In the latter part of August, 1864, and after the defendants had taken possession to make the necessary repairs, the plaintiff's tug-boat was injured in passing the pier at high water, and the injury was caused by some of the spiles which had fallen away from the pier and projected out towards the channel of the river, and in such manner that when the tide was high they were completely covered. The defendants were free from negligence.

Several questions were argued upon the presentation of this case, but it is only necessary to consider one of them, inasmuch as the ruling of the presiding judge in relation thereto on the trial was erroneous, and a new trial must be granted. Upon the conclusion of the evidence, the defendants' counsel moved to dismiss the complaint, and among others, upon the ground that it did not appear that the corporation had notice of the obstruction, and upon the motion being denied, he requested the court to charge that if the jury believed from the testimony that the defendants had no notice, express or implied, of the existence of the obstruction before the occurrence of the accident, then they were entitled to a verdict. The court refused so to charge, and the defendants' counsel excepted, having already excepted to the denial of the motion to dismiss the complaint. Assuming that that part of the river over which the plaintiff's tug-boat was progressing when the accident occurred, is a part of the public highway which the defendants are bound to keep in repair, and applying to them in respect to it all the obligations imposed upon them by law in relation to highways under their control, then the plaintiff cannot recover, because it was no part of their duty to the public to remove obstructions placed upon it by third persons, of which they had no notice, express or implied. This rule is well settled, and is no longer debatable (*Griffin* v. *The Mayor*, 9

N. Y. Rep. 456; *Barton* v. *The City of Syracuse*, 36 N. Y. Rep. 54). The spiles which occasioned the injury to the plaintiff's boat were not part of the pier which the defendants were bound to keep in repair. They were placed there by the assignee of their lessee, not of the wharf or pier, but of the wharfage, to grow or become due there, and who to them was a stranger. They were so placed for the benefit of the lessee, and not for the benefit or advantage of the defendants. The injury complained of in this case did not result from the omission of a duty therefore, or from neglect to do an act which it was incumbent on the defendants to perform, there being no notice, express or implied, of the existence of the obstruction mentioned. It is true that the president of the Steamship Company says that he thinks they had permission from the city authorities to drive the spiles, but if they had, it was only a verbal one, from whom obtained we do not know. That does not, however, meet the exigency of this case. The presiding judge declined to charge upon the question of notice, which involved not only express or implied knowledge of the existence of the obstruction, but the fact whether the consent of the defendants to the location of the spiles was given, if that had any relevancy to the question of notice, or if notice was to be presumed from it. If the plaintiff sought, in other words, to relieve himself from the burden of proving notice of the obstruction, by showing that the defendants consented in any way to the use of the spiles by the Steamship Company, it was his duty to prove that consent beyond a reasonable doubt. The witness stated only that if the company had a consent, it was a verbal one, adding that if they had not, it was common custom. The judge, however, as already stated, declined to submit the question of notice, and said to the jury that he thought it was of no consequence whether they had notice or not. The case must be regarded as one in which the defendants on the rulings at the trial were held liable for injuries resulting from an obstruction to the highway, not created by them, but by strangers, of which they had no notice, express or implied, and, as we have seen, no such liability exists.

The judgment must be reversed.

DALY, F. J.—The spiles were driven at the end of the pier for the benefit of the Steamship Company, and if there were old and decayed spiles there before, they may have been, for all we know, for the benefit of some other company using the wharf for a like special purpose. They formed no part of the wharf as a permanent structure.

There was no evidence of consent upon the part of the corporation. The president of the company left it indefinite and uncertain. He says, "I *think* we had, but *if* we had, &c., it was verbal." That fact being left by the evidence uncertain, the corporation were entitled to the benefit of the instruction that they were not responsible, if they had no knowledge of the obstruction. The ruling asked bore directly upon the fact of consent. It was that the verdict should be for the defendants, if they had no notice of the obstruction, express or implied. If they gave their consent, notice was implied; and as the giving or not of consent was left by the testimony uncertain, this instruction would have given the defendants the benefit of the doubt raised by the evidence, but the refusal of the court to charge as requested may have warranted the jury in supposing that consent or notice was immaterial. The judgment should be reversed.

BARRETT, J.—[dissenting.]—Judge Brady rests his judgment mainly upon the assumed fact that the spiles were an obstruction to the highway not created by the defendants, but by strangers. This assumption of fact is not, in my judgment, borne out by the evidence. The spiles were really a part and parcel of the pier. The original lessee covenanted to keep the pier in good repair, and the Steamship Company, as assignees of such lessee, assumed this covenant. The company found some spiles attached to the pier; but these spiles were decayed and worthless. The company then, as was not only their right, but their duty under the covenant, repaired the pier by the substitution of the new spiles in question for the old and useless ones which they had found.

The verdict can be sustained upon another ground. It is in evidence that the corporation had given its verbal consent

to the placing of the spiles. The witness was not interrogated as to the particular officer from whom this consent was obtained, but the general fact was not controverted. Such consent of itself established the defendants' liability, and that without notice, express or implied, of its having been acted upon. The fallacy is in treating the consent merely as a piece of evidence from which notice might be inferred, rather than an independent fact which dispensed with the necessity of proof of notice.

Again, the pier was in the physical occupation of the defendants, and they were actively engaged in the work of rebuilding it, at the time of the accident. Had the company been sued, they might well have pleaded that they had been relieved by these facts from their covenant to repair, and that the defendants had, for the time being, assumed an exclusive obligation in that respect.

In no aspect of the case, viewed with reference to its special facts, was the question of notice of the condition of the spiles, material or relevant.

I think the judgment should be affirmed.

Judgment reversed.