Allen, J.
The discrepancies alleged by the appellants between the general report of the referee and his special findings in response" to the requests of the counsel for the defendants, are seeming rather than real. There is in truth nothing in the special findings inconsistent with the material facts embodied in the original report upon which the recovery was had and judgment given; certainly nothing to overthrow or detract from the force and effect of those facts as found and reported. Both parties allege, what is clearly proved and found by the referee, that the sewer known as “ crooked sewer,” passing through and across the plaintiff’s premises, constituted the channel and outlet of a natural stream having its source in “ College pond.”
This sewer was constructed for a part of the distance, including the portion upon the plaintiff’s premises, through a deep ravine and had been built by the respective owners of the lands over and through which it passed, and by the city of Troy under and through the public streets and alleys of the city, occurring in its course. This “ crooked sewer ” after it left the premises of the plaintiff, crossed Federal *505 street and several other streets of the city, and passed through a part of Jacob street to the Hudson river at the foot of the latter street.
Up to the time of the obstructions caused by the alterations of the “ crooked sewer ” at Federal street in 1864, it had answered the purposes for which it was built, and had proved sufficient to carry off the water seeking a channel through it, and it is to" he inferred from all the evidence, as is substantially found by the referee, that but for the alterations and obstructions referred to it would have proved sufficient at the time of the rainfall, resulting in the injury which is the subject of this litigation. Prior to 3864 the defendants had caused a sewer to he built from the Hudson river through Federal street to a point a short distance from “ crooked sewer ” at its point of crossing that street, and had connected the two sewers by a small chute, but without obstructing or in any way diminishing the capacity of “ crooked sewer ” in its further passage to the river. The resolution of the common council of the city, under which Federal street sewer was constructed, was for the construction of a sewer to connect with the sewer that crossed Federal street near the foot of the hill east of Forth Fourth street, which was the so called “ crooked sewer,” with the necessary outlets, etc.
In 1864, one Tesón made an alteration in the connection between “ crooked sewer ” and “ Federal street sewer,” enlarging the chute or opening for the passage of the water from the former to the latter, and at the same time built a wail across “ crooked sewer,” nearly closing it below Federal street, so as to turn it substantially into the Federal street sewer, greatly diminishing the outlet, and the capacity of the sewer. By reason of this obstruction and change, “ crooked sewer” became greatly clogged, and filled up, by the collection of rubbish, dirt and debris, at the junction of it with the other sewer, and the result was that, in a very sudden and unusual rainfall, in June, 1866, the water accumulated to so great an extent as to break away the sewer on the plaintiff’s premises, overflowing them, and greatly damaging his *506 dwelling-house, in process of erection and nearly completed, and causing damage to the plaintiff in other respects. There is no controversy as to the facts thus far stated. The questions in respect to which the learned counsel for the respective parties differ, and upon which the case, as now presented, necessarily hinges, is as to the action of the city government and the city officials in respect to the doings of Tesón, and the legal results of such action as affecting the liability of the municipality.
The referee has found that Tesón had permission from the common council of the city, and an authority directly from the city commissioner, to open “ crooked sewer ” in Federal street, and enlarge the trunk leading from it to the Federal street sewer; and that, at the time he made such opening and enlarged the trunk connecting the two sewers, he built the wall in “ crooked sewer,” obstructing the passage of water in it and turning it into the other sewer; and that subsequently the common council audited his claim for services and disbursements in making the alterations, and ordered the same paid, and that the same was paid by the disbursing officer of the defendant. In his report and judgment, the referee charges the defendant with the loss and damage sustained by the plaintiff, upon the ground that the defendant was chargeable with notice of the existence of the obstructions in the sewer. The evidence justified, I think, the conclusions of the referee upon the question. There was no direct evidence of permission, by formal resolution of the common council, to Tesón to make the changes in the connections between the two sewers, but there was evidence of an application, by petition, for the permission, and that the petition was referred to the committee on sewers, with power; and although it was not proved that the committee formally met and acted on the subject-matter of'the petition, it was proved that the city commissioner for that year, whose duty it was to look after and inspect sewers already built, authorized the changes to be made, and that the city subsequently paid for the work. The proof was by Mr. Tesón, although the fact is not found by the referee, that .the *507 petition presented by him to the common council was to “ change the opening, and turn the surplus water from the stone sewer —the old sewer — into the Federal street sewer.” It is clearly to be inferred from this evidence that the city government, by its official representative, had full notice of all that was done by Tesón, and the manner in which the changes had been made, and the means taken to turn the sewerage from the old sewer into the new, or Federal street sewer, even if it was not expressly authorized to be done in advance of the changes actually made. A payment for the work implies' a knowledge of what was done and is an adoption of the entire action of Tesón, and the fact that Bolton, the city commissioner, authorized the work to be done, authorizes the presumption that he performed his duty and supervised and watched the progress of the work while being done, and the restoration of the street to its former condition. I incline to the opinion that the evidence would have fully sustained a judgment against the defendant, on the ground that the work was so authorized by the city authorities as to make Tesón the agent of the city, for whose acts and neglects, in the performance of the work, the city was liable. But the legal result is the same, it] as the referee has found, the city is chargeable with notice of the existence of the obstructions. The entertaining the application by Tesón, and its reference to a committee, with, a delegation of power to grant the permission asked, was a recognition of the legal control of the sewer by the city government, and the payment for the work done and materials supplied in accomplishing the work, was a recognition of legal obligation of the city to maintain the sewer and keep it in proper condition. These facts, in connection with the proved action of the city officials, satisfactorily bring home to the city authorities notice and knowledge of the whole change wrought by Tesón in the structure and capacity of the sewers. It is no answer to say that the common council could • not delegate to a committee the power to act definitely upon the petition of Tesón, and to change or authorize a change in the sewers, or *508 that the city commissioner had no power to-give authority to make the changes. It is not a question of power, or whether the acts were ultra vvres, but one of notice. If the city government, or the officials of the city charged with the care of the sewers, had notice of the changes and consequent obstructions or liability to obstructions, and neglected to keep them properly open and in suitable condition; and loss and damage came to individuals by reason of such neglect, the city must respond, although the changes were made and the obstructions caused by wrong-doers, and without authqrity. I think the evidence authorized a finding of actual notice to the city commissioner and the common council; but, if not, facts were proved which made it their duty to learn what had been done, and this, in the language of the referee, renders the defendant chargeable with notice of the existence of the obstructions.
The sewer, at the point of the obstruction, as well as the whole sewer, into which the waters were directed by the changes made in 1864, were constructed by the city of Troy, and of the proper dimensions, and but for the alterations made and the obstructions suffered to accumulate by reason of such alterations, no harm would have come to any one. Whatever may have been the original obligation or duty of the city in respect to providing sewage, and a proper channel for the passage of the water that found its way into the old or “ crooked sewer,” having undertaken the building of the sewer it was its duty to keep it in proper repair, and it is liable for any neglect in its proper maintenance, or for any changes or alterations made by the city or its authority or with the knowledge of the city officials,-in its structure, by means of which the waters are obstructed in their passage and damage ensues to others. This was ruled in Rochester White Lead Co. v. City of Rochester (3 Comst., 463); Barton v. City of Syracuse (37 Barb., 292; affirmed, 36 N. Y., 54) ; Mc Carthy v. Same (46 id., 194); Hines v. City of Lockport (50 id., 236); and see Dillon on Municipal Corporations, section 802, and cases cited in notes; Mayor v. *509 Furze (3 Hill., 612). This principle is approved in Mills v. City of Brooklyn (32 N. Y., 489), and that case distinguished from those cited, and others holding the same doctrine.
There was no valid objections to a recovery by the plaintiff for the injuries to the dwelling-house. It was a part of the realty and the property of the plaintiff. The fact that it was built by contract and was not completed, did not detract from his right to the house as it was, or to recover for its destruction. A recovery by him would bar an action by the contractors even if it be conceded they would have a remedy against the defendant. Whether an action would lie at their suit may be very doubtful. It would depend upon their liability to the plaintiff and their obligation to deliver to him a completed house notwithstanding the destruction of the partially completed building, by the falling in of the sewer on the plaintiff’s own premises, and without fault on their part. This liability would not probably be readily acquiesced in by the contractors, and it might be difficult to establish it by action. But no legal objection exists to a recovery by the plaintiff for that which was clearly his, although he might have an action against a third person who in turn would have a remedy over against the city.
It was proper to allow to the plaintiff the rental value of the house for the time during which he was deprived of its use by reason of the injuries to it, and there appears to be no good objection to the allowance of the other items for which the recovery was had. As modified by the Supreme Court, the judgment should be affirmed.
All concur.
Judgment affirmed.