Raymond Scamp, Claimant, *v.* State of New York, Defendant.
(Claim No. 28165.)

Court of Claims, June 3, 1947.

*Franklin H. Smith* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J.   On July 21, 1945, claimant and his wife were, and since 1930 had been, the owners of a parcel of land about three fourths of an acre in area with a dwelling house and other structures located thereon, and situate on the west side of Route No. 96 in Bushnell's Basin, town of Perinton, Monroe County, New York.   On that date claimant was, and for some time prior thereto had been, engaged in gardening and landscape work.   In connection therewith, at all times herein mentioned, he raised and grew nursery stock and flowers, and in addition thereto he raised and kept poultry on said premises.

It is undisputed that on the date above mentioned the above premises were flooded during a rainstorm, and that claimant sustained damage to his nursery stock and to his poultry. Claimant has filed a claim, alleging, among other things:

"4. On or about July 21, 1945, the aforesaid premises were flooded during rains occurring on said date by reason of the defective condition of Highway Route #96 in the vicinity of said premises.

"5. In the construction of said highway the State of New York, its officers, agents and employees raised the grade of the roadway from that existing prior thereto in the vicinity of the claimant's premises, and failed and neglected to construct a culvert under the same in the place of the one under the prior existing road, which culvert drained the area lying westerly thereof including the premises of the claimant.

"6. The State of New York, its officers, agents and employees, had notice of the conditions then existing at and prior to the construction of the new roadway in the vicinity of the claimant's premises, and in disregard thereof carelessly and negligently caused the construction of said roadway by raising the grade thereof as aforesaid, and failed to construct the culvert thereunder as aforesaid.

"7. The State of New York, its officers, agents and employees, prior to the time hereinbefore stated had notice that said highway caused the flooding of the lands lying westerly thereof at the above described location.

"8. That by reason of the careless and negligent conduct of the State of New York, its officers, agents and employees, the premises of the claimant and his wife were flooded as aforesaid * * *."

The State of New York denies liability herein, and contends that claimant has failed to prove any cause of action against it.

We are of the opinion that claimant has failed to make out any cause of action against the State of New York, and that his claim must be dismissed upon the merits.

The road in front of claimant's property is a two-strip concrete highway, eighteen feet wide, constructed by the State of New York about 1926. At a point about 100 feet to the north of claimant's property, it makes a gradual swing upgrade to the northwest. Adjacent to claimant's property, and situate to the north and west thereof, is land owned by the Fire District Association of Bushnell's Basin, New York, and the curve hereinbefore referred to commences about in front of the Fire District property. The slope of the Fire District property is generally from north to south with a depressed area in the southeast corner thereof adjacent to the west side of the highway and adjoining claimant's northerly property line. The highest point on the Fire District Association property is about seventy-five feet north of claimant's northerly property line, and it is at this point that there is located the Fire Hall which contains the equipment and is the headquarters of the local fire department.

The grade of the ground around claimant's house on the north side thereof is about two feet below the top of the house foundation. The grade of claimant's land on an average is about ten inches below the grade of the highway upon which it abuts. The lowest point on claimant's land is about eighteen inches below the grade of said highway. The lowest point on the Fire District property is in the southeast corner thereof and is about three feet below the level of the highway; and it is, consequently, twenty-six inches lower than the average grade and eighteen inches below the grade of the lowest part of claimant's land.

In 1942 and again in 1943 the Fire District Association land was graded. Dirt was taken from a bank of earth on the north side of the lot, and the lot was filled in to the east toward the highway and to the south of the Fire Hall between the Fire Hall and claimant's northerly property line. Fill was put in the depressed area in the southeast corner of said lot, but the grade of the lot, including the depressed area in the southeast corner thereof, was not brought up to the level of the highway. The Fire Hall lot during this grading process was sloped gradually toward claimant's property, and a dike of earth about one foot in height was built on said lot on or near claim-

ant's northerly boundary line. The average overall increase in the elevation of that part of the Fire Association lot which was thus graded and filled in was two feet. The foregoing is, generally speaking, a description as of July 21, 1945, of the physical surroundings of claimant's property and of property immediately adjoining thereto which we deem pertinent for our consideration.

The uncontradicted evidence herein establishes that previous to the grading of the Fire Association lot, surface waters coming and gathering upon it had been, to a great extent, in due course absorbed by the earth without much of said waters running off to the south and onto claimant's property. No flood similar to the one complained of had been experienced by claimant prior to the grading of the Fire Association lot.

Upon the occasion complained of herein, claimant's land to the north and to the west or rear of his house was flooded to a depth of two and one-half feet. The afore-mentioned dike along claimant's northern boundary line on that occasion gave way, and surface waters came across the Fire Association lot, and particularly from the low spot in the southeast corner thereof, and onto and upon claimant's property.

Testimony was adduced that a culvert, located on the west side of Route No. 96 about 150 feet north of the Fire Association lot, was filled up with leaves and sludge, and that no water was going into the culvert but was flowing directly onto the road. It does not appear from the record exactly when this condition of the culvert was observed; neither was it shown for how long it had persisted. We may infer, however, from all the evidence that this condition was observed the day of the flood complained of; and there is no evidence in the record that it had ever been observed in that condition at any other time.

The claim herein appears to be based upon improper and negligent construction of the highway in the particulars set forth in the paragraphs of the claim which we have herein-before quoted. In our opinion the record fails to establish any such improper, faulty, inadequate or negligent construction of the highway in such particulars or in any other particulars. The fact that claimant has sustained damages does not in and of itself entitle him to recover against the State. To entitle him to recover under his claim as filed, claimant must show not only that the defendant was negligent, but also that such negligence was the proximate cause of the flooding of his property. (*Annino* v. *City of Utica*, 276 N. Y. 192; *Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47.)

It is true that when a municipal corporation determines upon a plan of sewerage and puts such plan into effect, then the municipality becomes liable for damages resulting from negligence either in construction or in care and maintenance thereof. (*Mayor of City of New York* v. *Furze*, 3 Hill 612; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194; *Smith* v. *Mayor of City of New York*, 66 N. Y. 295; *Crage* v. *City of Buffalo*, 273 N. Y. 517; *Prime* v. *City of Yonkers*, 192 N. Y. 105, 110.) In this connection the court said in *McCarthy* v. *City of Syracuse* (*supra*, pp. 197–198): "Its duty to keep its sewers in repair, is not performed, by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear, is a neglect of duty which renders the city liable. (*Barton* v. *The City of Syracuse*, 37 Barbour 292; affirmed 36 N. Y., 54.)[1]"

A municipality is, however, not liable for an increase in flow of surface waters resulting solely from grading of streets, the erection of buildings, and improvement of private grounds. (*Fox* v. *City of New Rochelle*, 240 N. Y. 109.) It is well established that an adjacent owner of real estate is not required to take care of the surface water coming onto his lands from the lands of another. (*Bull* v. *State of New York*, 231 App. Div. 313.)

It has been held further that when, without the creation of a defined water course, or the alteration of an existing one, the result is so to change the natural contour of the land as to cause surface waters to collect in a highway and overflow a neighbor's property, the act is no less lawful. It seems that since this water is not cast by drains or ditches upon adjoining premises, the upper owners may get rid of it any way they can. They have full dominion over their own land, above as well as below the surface. The resulting damage gives no right of action. *Damnum absque injuria*. (*Bennett*

---

"[1]*Irvine* v. *Wood*, 51 N. Y. 229."

v. *Cupina*, 253 N. Y. 436, citing *Goodale* v. *Tuttle*, 29 N. Y. 459, 467; *Barkley* v. *Wilcox*, 86 N. Y. 140, 147, and *Howard* v. *City of Buffalo*, 211 N. Y. 241, 258.) If, however, a city collects surface waters into a single channel and casts them in a large and substantially increased volume on an adjacent owner so that a stream will be filled beyond its natural capacity and thereby causes the stream to overflow and flood his lands, the owner has a cause of action. A municipality has no immunity from legal responsibility for creating and maintaining nuisances. (*Noonan* v. *City of Albany*, 79 N. Y. 470; *Foster* v. *Webster*, 44 N. Y. S. 2d 153, 158; *Fox* v. *City of New Rochelle*, 240 N. Y. 109, *supra*.)

While the claim herein sounds in negligence by reason of improper construction of the highway in the particulars hereinbefore set forth, testimony was adduced as to the condition, at or near the time of the flood complained of, of the culvert to which reference has hereinbefore been made. We assume that this evidence was offered upon the question of the negligence of the State in its care and maintenance of the highway in question, and particularly of said culvert. While probably not strictly within the issues herein, we have considered the same, and we conclude that on this point also, claimant has failed to sustain his burden of proof.

Claimant has suffered damage through the unfortunate circumstances described in the claim and detailed in the evidence. We are satisfied, however, that he has failed to maintain the burden of proof required to establish that the State was negligent either in the construction of the highway and of its drainage facilities, or in its subsequent maintenance thereof. (*Fuller* v. *State of New York, Crounse* v. *State of New York*, 46 N. Y. S. 2d 762; *Gibson* v. *State of New York*, 187 Misc. 931.) To find otherwise under the circumstances herein would be to depend too much upon speculation and surmise. A question of negligence cannot be left to guess, speculation and surmise. (*Lahr* v. *Tirrill*, 274 N. Y. 112.)

By stipulation of counsel for the parties hereto, the court was permitted to view the site of claimant's property and the adjoining territory involved herein, and the court viewed the same. Defendant's motion for a dismissal of the claim herein made at the end of claimant's case and upon which decision was reserved is hereby granted with an exception thereon to the claimant.

Claimant's claim should be and hereby is upon the entire case herein dismissed upon the merits.