Harold Tessler, J.
This is an action by a large number of resident property owners in the Hollis and Bellaire sections of Queens County to recover damages resulting from the flooding of their land and dwellings due to the overflowing of the sewers in that area.
The complaint specifically alleges two separate causes of action (1) that the defendant constructed a storm sewer of insufficient capacity and thereafter negligently maintained it and (2) the defendant negligently granted building permits for new construction in the area and negligently permitted these new owners to connect into the already overburdened sewer. Although not separately pleaded, plaintiffs also allege the defendant constructed and maintained inadequate and defective catch basins; all of the foregoing the plaintiffs claim resulted in overflowing of said sewer and catch basins on August 11, 12 and 13, 1955, causing damage to the plaintiffs’ real and personal property.
The complaint groups all of the plaintiffs together and makes no effort to distinguish between the greater majority who reside in the 202nd Street and 90th Avenue area (Hollis) and the 18 plaintiffs who reside in the vicinity of 210th Street, 211th Street and 94th Avenue (Bellaire). The latter group must be considered separately and apart from the Hollis group, since they are completely outside the area serviced by the 90th Avenue storm sewer; in fact the evidence shows there is no storm sewer in the Bellaire area, there being only a private sanitary sewer with certain catch basins built and connected by the city to it. The plaintiffs were permitted on the trial to offer proof in connection with the Bellaire area in such a manner as specifically related to it, and the general pleadings are being accepted by the court to conform with the proof offered by the plaintiffs in that connection. However, because of the different locations and different essential facts involved, to-wit: there being no storm sewer whatsoever in the Bellaire area, the cause of action pleaded by these plaintiffs will be treated and covered separately in this opinion.
As to the plaintiffs, Janice and David Biss, residing at 86-26 Little Heck Parkway, Floral Park, the court finds that they live *1038 entirely outside both areas and are too far removed therefrom to come within the pleadings and allegations in this case. As to them, their complaint is dismissed for that reason.
This action was tried by the court without a jury. Together with counsel, the court laid down certain ground rules whereby it was agreed and stipulated by counsel that only testimony bearing on the question of liability would be first heard, the proof regarding damages to be held in abeyance pending the court’s determination of the question of liability. The plaintiffs offered testimony from eight plaintiffs who were representative of all of the plaintiffs, and although the proof by the plaintiffs was shortened pursuant to this general agreement, counsel for the plaintiffs was in no way precluded from offering additional proof and counsel was free at all times to call additional property owners or other witnesses if he in fact deemed it advisable or necessary to further his cause.
The evidence discloses that proceedings for the construction of a storm sewer in 90th Avenue wrere commenced in 1932, and the sewer was completed in July, 1935. It appears that the property owners in this area had agitated for this sewer for many years prior to its construction. In brief, the plaintiffs’ proof showed that heavy rainstorms resulted in the flooding of their premises and the streets surrounding; that this flooding commenced as far back as 1925 and occurred regularly a couple of times a year; that nothing was done toward alleviating this by the city, despite repeated protests and requests by the residents for the construction of a sewer until 1935; that on August 11, 12 and 13, 1955, a heavy rainstorm which accompanied “ Hurricane Connie ” caused an inundation of the whole area; that the water reached a height of three to four feet in the streets and up to seven feet in the cellars; that such floodings of the streets and cellars occurred prior to the construction of the sewer in 1935 and substantially to the same extent as on August 11, 12 and 13, 1955. The principal contention of the plaintiffs is that the sewer system as installed by the defendant was inadequate from its inception to alleviate the already existing flood conditions; that the defendant knew this or should have known it, and thus by failing to build a sewer capable of properly and adequately draining the area, the defendant was negligent and created a nuisance. Plaintiffs also contend that the defendant was additionally negligent by granting new building permits and allowing the permittees to connect to this already overburdened and inadequate sewer.
The city contends that it owed no duty or obligation to these plaintiffs to provide any sewer system at all; that the plaintiffs *1039 were no worse off than if no such sewer had been built; that the flooding was caused by the excessive amount of rainfall that fell on the days in question, and, therefore, the city could not reasonably anticipate such floods and that the city constructed the only sewer system possible under the existing conditions, and meanwhile the plaintiffs were the recipients of some benefit from the sewer as constructed.
Plaintiff, Helen Murtha, who had acquired premises 89-53 202nd Street from her mother in 1951, and had resided there since 1921, testified that it had started to rain at about 9:00 p.m. on August 10, 1955, and continued with more or less intensity through August 11 and August 12. The water poured into her cellar during the early morning hours of August 12 and rose to a height of 8 feet in the cellar, and about 4 feet in the streets. She saw the water bubbling up from the manholes and backing out of the catch basins. The witness testified that from 1925 to 1935 floods of about the same degree occurred regularly with water in the cellar to a height of about 8 feet, about 1% feet in the rear yard and garage and 2% feet in the streets; that the area at that time was not paved and it was the witness’ testimony that after the streets were paved, the water rose higher than 2% feet.
Edward Meinhold of 90-21 — 202nd Street, who has owned his home since 1924, testified to substantially the same conditions with regular floodings of the streets and cellars prior to 1935. This witness testified that he was active in the neighborhood committee seeking the construction of a sewer and visited Borough President Maurice Connolly in 1927, in that connection. The testimony of these two property owners was typical of the testimony of the others, except that the others did not live in the area before 1935; consequently, their testimony related only to the floodings after 1935, and, of course, on August 11, 12 and 13, 1955. All of the witnesses testified that the cellars and streets were flooded more or less regularly through the years of 1955, on the average of once or twice a year.
Plaintiffs’ expert witness, a qualified sanitary engineer, testified that this 90th Avenue sewer had a capacity of 50 cubic feet per second, and was inadequate to service the area which he estimated at 314 acres; that the sewer was inadequate to take care of a normal rainfall, defining a normal rainfall to be one occurring once a year. He further stated that, although inadequate the sewer “ did some good.”
As the court observed in Seifert v. City of Brooklyn (101 N. Y. 136, 139) “ the cases on the subject are by no means *1040 harmonious and render it difficult to deduce from them any general rule, founded upon principle, which clearly marks the line of distinction, between liability and exemption therefrom.”
The general principle, as set forth by Mr. Justice Gray in Johnson v. District of Columbia (118 U. S. 19, 20-21) is as follows: ‘ ‘ The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of a deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to a revision by a court or jury in a particular lot of land. But the construction and repair of sewers, according to the general plan so adopted, are simply ministerial duties; and for any negligence in so constructing a sewer, or keeping it in repair, the municipality which has constructed and owns the sewer may be sued by a person whose property is thereby injured.”
The best statement of the accepted principles in this State that I can find is in Ebbets v. City of New York (111 App. Div. 364, 365-366), to-wit: “Different conditions require the application of different principles in these so-called sewer cases, and the following propositions may be stated as firmly established by authority: The duty of providing sewerage and drainage is 5%as¿-judicial, and in determining the necessity, location, capacity, etc., the officers upon whom the duty is imposed are required to exercise judgment and discretion, and no action lies at the instance of an individual for damages based upon either a failure to act or an error of judgment in acting (Wilson v. Mayor, etc., of New York, 1 Den. 595; Mills v. City of Brooklyn, 32 N. Y. 489; Lynch v. Mayor, 76 id. 60); this principle, however, cannot be extended so as to grant immunity to municipalities for acts which result in the invasion of private property or the creation of public or private nuisances, and for a trespass or a nuisance committed by it such municipality must respond the same as any individual (Seifert v. City of Brooklyn, 101 N. Y. 136, containing a careful review of the authorities by Ruger, Ch. J.; Clark v. City of Rochester, 43 Hun, 271; Magee v. City of Brooklyn, 18 App. Div. 22; Byrnes v. City of Cohoes, 67 N. Y. 204; Ahrens v. City of Rochester, 97 App. Div. 480); having determined upon a plan the municipality then becomes liable for negligence either in construction or in care and maintenance. (Mayor, etc., of City of New York v. Furze, 3 Hill, 612; Barton *1041 v. City of Syracuse, 36 N. Y. 54; McCarthy v. City of Syracuse, 46 id. 194; Smith v. Mayor, 66 id. 295.) It seems clear that the rule applicable to the case at bar is that stated in Smith v. Mayor (supra), and that in the absence of some proof to support a finding of negligence the plaintiffs cannot succeed. This is not a case where the mere happening of the event cast the burden of explanation upon the defendant.”
Counsel for the plaintiffs in his very able and extensive brief cites the foregoing, but omits the last two sentences thereof. In this court’s opinion it is these two sentences that contain the crux of the case at bar.
We start with the principle that a municipality owes no duty nor is it under compulsion of any kind to construct sewers for the disposal of surface waters. This is true no matter what the harm resulting from such a failure or omission by the municipality. (Cashin v. City of New Rochelle, 256 N. Y. 190; Mills v. City of Brooklyn, 32 N. Y. 489; Barton v. City of Syracuse, 37 Barb. 292, affd. 36 N. Y. 54; Wilson v. City of New York, 1 Denio 595; Anchor Brewing Co. v. Village of Dobbs Ferry, 156 N. Y. 695.)
Following this we find the weight of authority further holds that a municipality cannot be held liable for its failure to provide a drainage system sufficient to dispose of surface waters flowing as a result of the natural drainage, the grading and paving of streets. (Gibson v. State of New York, 64 N. Y. S. 2d 632 [1946]; Ebbets v. City of New York, 111 App. Div. 364; Prime v. City of Yonkers, 192 N. Y. 105 [1908]; Klein v. Town of Pittstown, 241 App. Div. 202; Fox v. City of New Rochelle, 240 N. Y. 109 [1925]; Geiger v. City of New York, 141 N. Y. S. 2d 667.)
In order for the plaintiffs to succeed herein, it follows from the enunciation of the foregoing general principles that they must show the defendant either affirmatively breached a duty it owed the plaintiffs or was actively guilty of negligence and by reason of such negligence caused the floods complained of. The plaintiffs’ almost sole reliance is on the authority of Seifert v. City of Brooklyn (101 N. Y. 136) and Agens v. City of New York (265 App. Div. 1054). The facts in these two cases are very similar to the facts in the present case. In all three cases the areas involved were inundated before the construction of the sewer and such inundations continued afterward. In each of the cases, it was demonstrated that actual use proved the sewer inadequate to carry off the water, with the result that at times of heavy rain the sewer overflowed and the properties and areas in which the plaintiffs resided were flooded.
*1042 Counsel for the plaintiffs places great reliance on these two cases, and argues that they are almost identical with the case at bar. Although there is a great similarity as to the general and superficial facts and proof involved, there is one difference that, in this court’s mind, distinguishes the present case from the others — and does so to a very substantial degree. In both the Seifert and Agens cases, the city constructed and connected new laterals to the trunk sewer, thereby increasing and aggravating the inundations year after year. In the Agens case the record shows that at least six laterals or branches were connected to the orignal trunk sewer in Yellowstone Boulevard, after it was constructed in 1929. Additionally, the evidence showed in each of these cases that these additions served to worsen the flooding conditions, and the city knew it and yet continued to build and connect these laterals; thus it ‘ ‘ increased from year to year the evil produced by the defects of the original plan. ’ ’
There is no such proof in the present case and consequently no such acts or course of conduct by the defendant have been shown. Plaintiffs bring forth no substantially similar facts or proof. Upon the trial, plaintiffs offered only the fact that the sewer in Francis Lewis Boulevard was connected to the subject one. No proof was offered, however, to the effect that such a connection appreciably affected the area in which the plaintiffs reside or that it in any way contributed to the floodings resulting. In fact, the testimony here by the plaintiffs themselves indicates that the inundations were much the same over the period from 1925 to 1955, when the present complaint arose. There is no question that the 90th Avenue sewer was inadequate when constructed and continued to be so. However, inadequacy alone is not sufficient to render the city liable. The city cannot be held liable for constructing an insufficient sewer system alone in view of the fact that the city was not required to install any sewer at all, and if it did so and the system was inadequate, this then was an error in judgment committed in the exercise of a quasi-judicial determination, for which there would be no redress by the plaintiffs. (Mills v. City of Brooklyn, 32 N. Y. 489, 500.) There must be more; there must be a distinction shown between the case at bar which merely shows an insufficiency and a case “ where the defendants had done acts which were in themselves positive nuisances ”.
I see no greater extension of the doctrine in the Mills case other than to hold the municipality liable only if it has in fact negligently maintained its sewer system by failure to repair, or such negligent maintenance can be imputed to it by its com *1043 mission of acts which result in the creation of the nuisance complained of, such as adding to its original trunk sewer laterals or branches which are in excess of the capacity of the trunk, or at least have the effect of overburdening the trunk so as to cause the floodings.
In the Agens case the city not only connected five or six laterals to the main Yellowstone trunk sewer, but also in 1932 (three years after the construction of the Yellowstone trunk) connected into it the eight-foot Juno Street sewer, which was shown to be the direct cause of the floodings. Not only did the city connect this additional burden, but continued to maintain it after it had knowledge that it was causing the floods. There is no such proof in the present case, and in the absence of such proof, I cannot but conclude that the cases are vastly different. The proof offered by the plaintiffs in this case is strictly confined to a mere reference to the fact that the Francis Lewis Boulevard sewer was connected to the subject sewer. Little was offered to show the effect of this connection, and in the absence of anything positive to indicate that it played a substantial part in the overflowing, the court cannot impute to this casual and unconvincing proof such a potency as would satisfy the principles enunciated by the cases relied upon by the plaintiffs.
Assuming, as the plaintiffs contend and the proof indicates, that the sewer in question was inadequate and deficient in both design and construction, there could be no liability attached to the defendant on that score alone. (Urguhart v. City of Ogdensburg, 91 N. Y. 67, 71.) The plaintiffs’ case must be predicated upon the proving that the defendant’s maintenance of the sewer was so negligent as to constitute a nuisance. The plaintiffs in this essential respect have failed to make out a case.
The precipitation that fell during the storm must be considered in attempting to arrive at the question of the defendant’s liability. I quote from the plaintiffs’ trial brief: “ Most of the plaintiffs claim that the rainfall of August 11,1955 caused the flooding. Some of them maintained that the rainfall of August 12th caused the flood and it was continual thereafter on August 13th.” Considering the plaintiffs’ contentions as illustrated above, together with the proof offered by them, the court must consider the character and intensity of the rainfall during the period in question. The hourly precipitation chart of the U. S. Weather Bureau station at La Guardia Field shows that during the period of 36 hours, from 10:00 p.m. of August 11, 1955, to 10:00 a.m. of August 13, 1955, the rainfall totalled 12.05 inches.
*1044 The U. S. Weather Bureau meteorological summary for the New York area issued in 1948 shows the monthly precipitation for the period of 1871-1948. That summary shows that a rainfall in excess of 12.05 inches during any entire month during that 78-year period occurred only once (in September, 1882); the next largest was 11.55 inches in October, 1903 and the third largest was 10.42 inches in August, 1875.
It is necessary, however, to further consider the intensity and concentration of the rainfall during a short period in order to properly apply a test for the adequacy of a drainage system. We find the hourly precipitation chart discloses that during the 24-hour period from 10:00 p.m. on August 11 to 10:00 p.m. on August 12, 1955, there was a total rainfall of 7.28 inches. The Weather Bureau summary shows that a rainfall of more than 5 inches during a 24-hour period has been exceeded only 4 times in more than 35 years and a fall of 7.28 inches in the same period of 24 hours has been exceeded only once, viz., in October, 1903. Further, we find the chart discloses a rainfall of 1.48 inches during the one hour from 8:00 a.m. to 9:00 a.m. on August 13,1955, and a fall of 1.96 in the two-hour period 8:00-10:00 a.m. of the same day. The Weather Bureau summary indicates that an hourly fall of 1.48 inches has been exceeded 10 times in 35 years and the 2-hour fall of 1.96 inches has been exceeded only 8 times in the prior 35 years.
Although it can be argued that a shorter period than the foregoing should be adhered to, the court is of the opinion that the data given above are proper and able to shed light on this question. Particularly is this so when we consider that the plaintiffs do not all agree on precisely what period of rainfall caused the floods complained of, but in fact contend that the floods came about at different times over the three-day period of August 11 to 13, 1955. Certainly, the amount of rainfall, as indicated by the chart and summary during the period specified, indicates a far greater than normal precipitation; when compared to the prior rainfalls and the infrequency in which it was exceeded over a prior 35-year period, the precipitation in question must be characterized as an unusual one, if not in fact, extraordinary. The rule of law is well settled that a municipality cannot be rendered liable for damages caused by an extraordinary and excessive rainfall. (Judas v. City of New York, 55 Misc. 259; Stack v. City of New York, 134 Misc. 105; O’Donnell v. City of Syracuse, 184 N. Y. 1; Holzhausen v. City of New York, 116 App. Div. 812; Punsky v. City of New York, 129 App. Div. 558.) We must keep in mind that this area was more or less a natural ‘1 flood bowl ’ ’ prior to the construction *1045 of the sewer in question and it is logical to believe that these natural conditions, together with the unusual and excessive rainfall, was the producing cause of the floods, unless the plaintiffs successfully carry the burden of proving that it was the negligence of the defendant that created the condition and resulting floods. I can only conclude that in the face of the evidence, the plaintiffs have failed to sustain this burden of proof, which failure is fatal to their recovery herein. (Cashin v. City of New Rochelle, 256 N. Y. 190.)
In the Bellaire area (210th St., 211th St. and 94th Ave.), the «vidence discloses that there was no storm sewer in this section. Plaintiffs testified there was only a private sanitary sewer to which the city in 1928 connected catch basins it had constructed at 211th St. and 94th Ave. Plaintiffs further testified that the area was frequently flooded prior to the above-mentioned connections and that the amount of floodings and its depth in the streets and houses was approximately the same before and after. As to these plaintiffs, the proof is negligible as to the defendant’s negligence insofar as its being liable for the damages sustained. In the absence of a storm sewer in the area, the plaintiffs are constrained to prove that the connection of the catch basins to the sanitary sewer caused the floodings. There is no proof to warrant such a conclusion. There is no proof by the plaintiffs to show the effect of these connections or that they had any effect whatsoever. The mere recital of this act by the city is not sufficient to prove the city’s negligence in the maintenance of the sewer or catch basins; particularly is this so when we view it in light of the proof that the same conditions prevailed previously. The same principles are to be applied in this phase of plaintiffs’ ease as are applicable to the Hollis area (supra).
Plaintiffs contend in their second cause of action that the defendant was negligent by reason of its granting building permits for new construction in the area and by permitting the new owners to connect into the already inadequate sewer in 90th Ave. (Hollis). I cannot accept this contention for to do so would be to place the municipality in a position of compelling it to perform illegal acts, i.e., to refuse to issue building and sewer connection permits to persons who are lawfully entitled to them. The normal growth and development of an area is something over which the city has no control, except as to the normal restrictions of zoning uses, construction requirements, etc. The city cannot lawfully refuse a building permit to those who are legally entitled to them. The municipality cannot be held liable for increase in the flow of surface waters occasioned *1046 by new construction, increased paving and other improvements in the area. (Fox v. City of New Rochelle, 240 N. Y. 109.)
The granting of the permits referred to by the plaintiffs does not constitute an act of negligence by the defendant in and of itself. There is nothing in the plaintiffs’ proof to indicate there was anything extraordinary or unreasonable about the granting of such permits. In fact; plaintiffs offered no proof of any kind other than the allegation in the complaint. Plaintiffs appear to contend that the area just grew in a normal way and by passively “ permitting ” such growth and development, the city is guilty of negligence and rendered itself liable to the damages sued for herein. I cannot abide such negative proof. It does not approach the measure of active and affirmative acts of negligence in maintaining the sewer system as the principles enunciated heretofore apparently require.
I find no proof to sustain the plaintiffs’ allegations that the defendant constructed and maintained inadequate and defective catch basins. Nor is there any evidence to show that such catch basins as were constructed by the defendant were maintained in so negligent a manner as to constitute a nuisance so as to render the defendant liable for plaintiffs’ damages.
The plaintiffs herein have offered no proof to show that the defendant was negligent in the construction of the sewer or that it was defectively constructed. They contend merely that the sewer was inadequate to do the job for which it was built and defendant’s failure to correct the situation and its acts of commission such as connecting the Francis Lewis Boulevard sewer, the granting of building permits, etc., constituted the maintenance of a nuisance. I find that the plaintiffs have failed to sustain the burden of proving that they are entitled to damages. In the court’s opinion there is no basis for liability within the weight of authority and for the reasons already stated.
Defendant is entitled to judgment dismissing the complaint, without costs. • Enter judgment accordingly.